DECISION. *Page 2 *Page 3 
{¶ 1} Plaintiff-appellant Victor Wadley has appealed from the trial court's entry of summary judgment for defendant-appellee The Knowlton Manufacturing Company ("Knowlton") on Wadley's intentional-tort claim.
 {¶ 2} For the following reasons, the judgment of the trial court is affirmed.
 Wadley is Injured {¶ 3} Wadley was assigned to work at Knowlton through CM Temporary Services. Knowlton is a job-shop manufacturer that produces steel components for other businesses. Wadley had been placed at Knowlton in the past, and on these occasions he had primarily painted and performed various maintenance tasks. On March 5, 2003, Wadley had been assigned to operate a punch-press machine for Knowlton.
 {¶ 4} The punch-press machine required its operator to place a part inside the press. The operator wore wristlets, also referred to as hand guards, around both wrists, and the wristlets connected to pull-out cables attached to the machine. Once the operator had placed the part inside the press, he or she pushed down on a foot pedal, which caused the machine to compress. As the ram on the machine came down to punch the part that had been placed inside, the pull-out cables removed the operator's hands from the machine.
 {¶ 5} Rick Smith, a die setter at Knowlton, had explained to Wadley how to operate the punch-press machine. Smith operated the machine himself as a demonstration. According to Wadley, he told Smith that his foot was too big for the foot pedal on the machine and that the left wristlet did not fit. Wadley testified *Page 4 
during his deposition that Smith had told him to use the tip of his boot to operate the foot pedal, and that Smith had punched an additional hole in the left wristlet to fit Wadley's wrist. Smith then strapped Wadley into the machine and watched him operate it for several rounds.
 {¶ 6} Wadley operated the machine without incident while Smith watched. But shortly thereafter, Wadley's left hand was crushed inside the punch-press machine, and four fingers were amputated. According to Wadley, the altered wristlet had slipped off his left wrist inside the machine, and his hand was not pulled out when the ram came down.
 {¶ 7} Following his injury, Wadley filed suit against Knowlton, alleging an intentional tort. The trial court granted Knowlton summary judgment.
 Standard of Review {¶ 8} This court reviews a grant of summary judgment de novo, without any deference to the trial court's decision.[1] Summary judgment is appropriately granted when there exists no genuine issue of material fact, the movant is entitled to judgment as a matter of law, and the evidence, when viewed in favor of the non-moving party, permits only one reasonable conclusion that is adverse to the non-moving party.[2]
 Intentional-Tort Standard {¶ 9} To recover on a claim for an intentional tort, a plaintiff must prove the following: "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge *Page 5 
by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task."[3]
 {¶ 10} An employee must present proof beyond that necessary to establish negligence or recklessness.[4] Mere knowledge and appreciation of a risk do not establish that an employer knew with substantial certainty that an injury was likely to occur.[5]
 {¶ 11} This is a very difficult standard to meet, as an intentional-tort claim is intended to be a narrow exception to the workers' compensation system's prohibition on an employee's ability to sue his or her employer for a workplace injury.[6]
 Application to Wadley {¶ 12} We focus our analysis on the second prong of this test, as it is determinative of the outcome.
 {¶ 13} Wadley argues that Knowlton had knowledge that if an employee were subject to the dangerous procedure of operating a punch-press machine, harm was substantially certain to occur because (1) Knowlton had altered a safety device on the punch-press machine; (2) other Knowlton employees had been injured on a punch-press machine prior to Wadley's injury; (3) Rick Smith had expressed concerns to management about the dangers involved in placing inexperienced temporary *Page 6 
workers on a punch-press machine; (4) Knowlton had failed to provide Wadley with safety training; (5) Wadley had expressed concern over the machine before operating it; and (6) Knowlton had received citations from the Occupational Safety and Health Administration ("OSHA") for violations relating to punch-press safety.
 {¶ 14} But none of these factors demonstrated that Knowlton knew with substantial certainty that Wadley would be injured on the punch-press machine. Although Rick Smith had expressed concern over the ability of temporary workers to operate a punch-press machine, he had raised no such concern about Wadley specifically.
 {¶ 15} Nor did Wadley's allegations that other employees had previously suffered injuries on a punch-press machine demonstrate substantial certainty. In his deposition, Wadley was only able to provide general statements about prior injuries to other employees. Rick Smith also briefly discussed injuries to other employees during his deposition. But Smith described these injuries as "people getting just little tips cut off." According to Smith, no other employees had suffered an injury similar to Wadley's. As this court has previously stated, "[t]hough the lack of a prior injury is not fatal to a plaintiff's case, it is evidence tending to show that an employer did not have knowledge that an injury was substantially certain to occur."[7]
 {¶ 16} Wadley additionally relies on two documents from OSHA to support his assertion that Knowlton had knowledge of prior injuries to other employees. The first is a log of work-related injuries at Knowlton. The second is a compilation of citations issued to Knowlton by OSHA. Wadley had attached these documents to his motion for summary judgment. Knowlton argues that these documents were not *Page 7 
properly before the trial court and under Civ.R. 56 could not be considered for purposes of summary judgment. Knowlton is correct.
 {¶ 17} Civ.R. 56(C) states that "[s]ummary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule."
 {¶ 18} The OSHA documents were not made a part of the record as required by Civ.R. 56. "The proper procedure for introducing evidentiary matter not specifically authorized by Civ.R. 56(C) is to incorporate it by reference in a properly framed affidavit pursuant to Civ.R. 56(E)."[8] "The requirement of Civ.R. 56(E) that sworn or certified copies of all papers referred to in the affidavit be attached is satisfied by attaching the papers to the affidavit, coupled with a statement therein that such copies are true copies and reproductions."[9] "Unauthenticated documents which are not sworn, certified, or authenticated by way of affidavit have no evidentiary value and may not [be] considered by the trial court."[10]
 {¶ 19} The OSHA documents were not properly before the trial court under Civ.R. 56(C), and this court is precluded from considering them.[11] But we note that, had these documents been properly made part of the record, they did not *Page 8 
demonstrate that Knowlton knew with substantial certainty that Wadley would be injured while operating the punch-press machine. The work-related injury log only documented one amputation injury that had occurred prior to Wadley's injury. And this injury had occurred in 2001, when Knowlton had been under different ownership.
 {¶ 20} Regarding safety training, or the lack thereof, the record contains no evidence that Wadley had received any type of training or explanation that was different than that provided to other workers operating a punch-press machine. And because no other employees had suffered an injury similar to Wadley's, Knowlton would not have had knowledge that the training and explanation it had provided was inadequate and was substantially certain to result in an injury. Moreover, this court has noted that "[t]here are many acts within the business or manufacturing process which involve the existence of dangers, where management fails to take corrective action, institute safety measures, or properly warn the employee of the risks involved. Such conduct may be characterized as gross negligence or wantonness on the part of the employer. However, in view of the overall purposes of our Worker's Compensation Act, such conduct should not be classified as an `intentional tort.'"[12]
 {¶ 21} We briefly address Wadley's argument that Knowlton's alteration of the left wristlet made his injury substantially certain to occur. Even had Knowlton altered the wristlet, a fact contested by Knowlton, we determine that such conduct was reckless at best and did not demonstrate that Knowlton knew with substantial certainty that Wadley would be injured by operating the punch-press machine with an altered wristlet. *Page 9 
 {¶ 22} In summary, the evidence in the record pursuant to Civ.R. 56 demonstrated that while Knowlton might have acted negligently or recklessly, it did not know that an injury was substantially certain to occur to Wadley when he operated the punch-press machine.
 {¶ 23} Accordingly, we conclude that there existed no genuine issues of material fact, and that Knowlton was entitled to judgment as a matter of law because Wadley failed to demonstrate that Knowlton had committed an intentional tort. The trial court properly granted summary judgment to Knowlton, and that judgment is affirmed.
Judgment affirmed.
CUNNINGHAM and DINKELACKER, JJ., concur.
[1] Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336,671 N.E.2d 241.
[2] State ex rel. Howard v. Ferreri, 70 Ohio St.3d 587, 589,1994-Ohio-130, 639 N.E.2d 1189.
[3] Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus.
[4] Id. at paragraph two of the syllabus.
[5] Id.
[6] Blanton v. Internatl. Minerals and Chemical Corp. (1997),125 Ohio App.3d 22, 25, 707 N.E.2d 960.
[7] Id. at 26.
[8] Douglass v. Salem Community Hosp., 153 Ohio App.3d 350,2003-Ohio-4006, 794 N.E.2d 107, ¶ 25, quoting Biskupich v. Westbay ManorNursing Home (1986), 33 Ohio App.3d 220, 222, 515 N.E.2d 632.
[9] Id., quoting State ex rel. Corrigan v. Seminatore (1981),66 Ohio St.2d 459, 467, 423 N.E.2d 105.
[10] Goss v. KMART Corp., 11th Dist. No. 2006-T-0117, 2007-Ohio-3200, ¶ 41, quoting Internatl. Brotherhood of Electrical Workers v.Hyder, 6th Dist. No. WD-03-067, 2004-Ohio-3460, ¶ 19.
[11] See Kramer v. West Am. Ins. Co. (Oct. 6, 1982), 1st Dist. Nos. C-810829 and C-810891.
[12] Osona v. Art Woodworking Mfg. Co. (Aug. 16, 1989), 1st Dist. No. C-880521, quoting Van Fossen v. Babcock Wilcox Co. (1988),36 Ohio St.3d 100, 117, 522 N.E.2d 489. *Page 1