OPINION
{¶ 1} Plaintiffs-appellants, Bryan Ferryman and Joylyn Samuel-Ferryman, appeal a decision of the Madison County Court of Common Pleas granting summary judgment to defendants-appellees, Conduit Pipe Products Company and The Phoenix Forge Group, in an employer intentional tort action.
 {¶ 2} Bryan Ferryman was injured on July 23, 2003, during the course of his *Page 2 
employment with Conduit. On that day, he was operating a Conomatic screw machine, which has rotating spindles at the end with a metal barrier guard in front of the spindles. At the time of the accident, Ferryman was cleaning out metal shavings from underneath the spindles with a shovel. Ferryman's ponytail caught in the rotating spindles and he lost part of his scalp.
 {¶ 3} Ferryman and his wife filed a complaint against Conduit and its parent company, The Phoenix Forge Group, on March 30, 2005, alleging an employer intentional tort.[1] Conduit and Phoenix moved for summary judgment and the trial court granted summary judgment in favor of Conduit and Phoenix on January 19, 2007.
 {¶ 4} Appellants now appeal, raising a single assignment of error in which they assert that the trial court erred in granting summary judgment since genuine issues of material fact exist to support finding of all of the elements of an employer intentional tort.
 {¶ 5} This court conducts a de novo review of a trial court's decision on summary judgment. Burgess v. Tackas (1998), 125 Ohio App.3d 294, 296. A court may grant summary judgment only when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence submitted that reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C);Welco Indus., Inc. v. Applied Cos., 67 Ohio St.3d 344, 346,1993-Ohio-191.
 {¶ 6} Generally, actions for injuries sustained in the course of employment must be addressed within the framework of Ohio's workers' compensation statutes. Blankenship v. Cincinnati Milacron Chemicals,Inc. (1982), 69 Ohio St.2d 608, 614. However, an exception to this rule exists where the employer's conduct is sufficiently "egregious" to constitute an *Page 3 
intentional tort and in that instance, an employee may institute a tort action against the employer. See Sanek v. Duracote Corp. (1989),43 Ohio St.3d 169, 172.
 {¶ 7} To prevail in a common law action[2] for intentional tort against an employer, a plaintiff must show: "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, paragraph one of the syllabus.
 {¶ 8} Cases involving workplace intentional torts must be judged on the totality of the circumstances surrounding each incident. Gibson v.Drainage Prods., Inc., 95 Ohio St.3d 171, 2002-Ohio-2008, at ¶ 27. Mere knowledge and appreciation of a risk does not establish "intent" on the part of the employer. Cross v. Hydracrete Pumping Co., Inc. (1999),133 Ohio App.3d 501, 507, citing Fyffe at 118. There must be proof that the employer acted despite a known threat that harm to an employee is substantially certain to occur. Kunkler v. Goodyear Tire RubberCo. (1988), 36 Ohio St.3d 135, 139. Proof of the employer's intent "is by necessity a matter of circumstantial evidence and inferences drawn from alleged facts appearing in the depositions, affidavits and exhibits. Even with these facts construed most strongly in favor of the employee * * * the proof of the employer's intent must still be more *Page 4 
than negligence or recklessness." Emminger v. Motion Savers, Inc.
(1990), 60 Ohio App.3d 14, 17.
 {¶ 9} An employer may be liable for the consequences of its acts even though it never intended a specific result. Gibson v. DrainageProducts, 95 Ohio St.3d 171, 179, 2002-Ohio-2008, at ¶ 28. "If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result." Id., quoting VanFossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, 115. Nevertheless, an employer is considered to have intended to cause injury to an employee "only when a reasonable person could infer from the surrounding circumstances that the employer, with knowledge of a risk ofcertain injury from a dangerous condition, still requires an employee toperform the dangerous procedure." (Emphasis sic.) Youngbird v. WhirlpoolCorp. (1994), 99 Ohio App.3d 740, 747, citing Fyffe, at paragraph two of the syllabus.
 {¶ 10} In this case, the trial court found there was no evidence to create a genuine issue of material fact regarding the second and third prongs of the Fyffe test. On appeal, appellants argue that they presented evidence to create a genuine issue of material fact regarding both whether the employer had knowledge that an injury was substantially certain to occur and regarding whether the employer required the employee to perform the job with this knowledge.
 {¶ 11} Appellants first argue that the employer had knowledge that an injury was substantially certain to occur. The Ohio Supreme Court has defined the "substantially certain" requirement as requiring "proof beyond that required to prove negligence and beyond that to prove recklessness * * *." Fyffe, paragraph two of the syllabus. "Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be *Page 5 
characterized as recklessness. As the probability that the consequences further increases, and the employer knows that injuries to employees are certain or substantially certain to result * * * he is treated by the law as if he had in fact desired to produce the result." Id. It is well-settled, though, that "mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent." Id.
 {¶ 12} As discussed above, Ferryman was injured when his ponytail caught in the rotating spindles of a screw machine. The machine has rotating spindles that extend at one end. The machine also has a metal barrier guard, similar to a fence, in front of the rotating spindles. A written "Job Safety Analysis" is attached to the machine that states that the guard and shields are to be in place when the machine is running.
 {¶ 13} The guard does not reach the floor and the record contains testimony that employees cleaned the shavings without shutting down the machine. There is testimony that operators used a long shovel pushed underneath the guard to clean out the machine shavings. The guard is not fixed and can be pulled back and there is also testimony that some operators pulled the guard back in order to clean out the shavings underneath the machine while it was running.
 {¶ 14} At the time of the accident, Ferryman was cleaning out metal shavings from underneath the rotating spindles with a shovel. His ponytail caught in the rotating spindles and he lost part of his scalp. Ferryman testified that he began working at the plant in 1999 when it was owned by another company and was technically fired and rehired when Conduit bought the company in July 2002, although the job remained the same. He testified to training that occurred when he was rehired and that the training involved lock-out/tag-out procedures and general instructions on all the machines. He also stated that safety requirements included keeping guards in place.
 {¶ 15} Ferryman testified that it did not matter if the guard was open or closed when a *Page 6 
person was cleaning because the guard did not go down far enough to impede the operation of removing the shavings and he had full access to the shavings tray whether the guard was open or not. He agreed that the shovel used to clean shavings was long enough to stand outside the barrier guard and maneuver around to do what was needed to clean the shavings without the worker putting his body in close proximity to the rotating spindles. Ferryman also testified that he was never told by management to clean the machine while it was running, although he believes that management would have witnessed him doing so. He did not have any specific recall of management observing him, but stated that they "would have had to have been aware of it."
 {¶ 16} Thomas Costello, the plant manager, testified that he was not aware that employees were cleaning the machine while it was running with the guard open. Rick Hall, the supervisor in the area, testified that it was common practice for employees to clean the machine while running, but with the guard closed and using the shovel underneath the guard. He indicated that employees also cleaned the machine when it was shut down, such as when returning from lunch.
 {¶ 17} Ferryman stated that he is unsure if the guard was open or closed at the time of his injury and he does not know how his hair got caught in the machine. Both parties' expert witnesses determined that the guard was most likely open when the accident occurred.
 {¶ 18} Appellants first argue that the employer had knowledge that an injury was substantially certain to occur because of inadequate guarding, OSHA citations, and prior accidents. What constitutes a "substantial certainty" varies from case to case. Richie v. RogersCartage Co. (1993), 89 Ohio App.3d 638. One factor to consider in whether the employer knew that an injury was substantially certain to occur is the adequacy of guards on the equipment. See Brookover v.Flexmag Industries, Washington App. No. 00CA49, 2002-Ohio-2404. *Page 7 
 {¶ 19} Appellants argue the guards were inadequate on the machine, making injury substantially certain to occur. As support for this argument, they rely on the testimony of Gerald Rennell, their expert witness. We note that while expert opinion may be probative evidence to consider regarding whether the plaintiff has produced evidence as to the elements of an employer intentional tort, an expert's opinion "does not establish that element as a legal conclusion." Teal v. Colonial Stairand Woodwork Co., Fayette App. No. CA2004-03-009, 2004-Ohio-6246, ¶ 17. Rather, the opinion "must create a genuine issue of material fact from a legal standpoint." Id.
 {¶ 20} Rennell investigated the accident on behalf of appellants. He stated that the guard was most likely open when the injury occurred and for Ferryman to have been injured with the guard in place, he would have had to have his head and foot underneath the bottom of the guard in order to come in contact with the spindles. Rennell determined that the guard on the machine was inadequate according to standards issued by the American National Standards Institute. He testified that it was substantially certain that an injury would occur because the guard did not have an interlock that prevented the machine from running if the guard were moved. He also testified that there was inadequate training, and that Conduit had to know that employees were cleaning the machines this way because he could not believe that someone had not seen it.
 {¶ 21} Appellants also argue that the manufacturer's handbook states that hands or objects are not to be placed beyond the guard while the machine is running and that the Job Safety Analysis (JSA) provided to employees by Conduit references steps associated with cleaning the shavings and states that dangers include lacerations and pinched fingers as known hazards associated with the machine. They argue that the manufacturer warnings require the guards to be in place and the spindles not running unless the guards were closed and that objects should not go beyond the guard while the spindles were in motion. They *Page 8 
further argue that knowledge of this danger was acknowledged by Conduit in the Job Safety Analysis which states that guards and shields must be in place when the machine is running.
 {¶ 22} Conduit argues, however, that Ferryman disregarded a written policy as the Job Safety analysis attached to the machine instructed employees not to move guards while the machine was running. "[W]hen safety devices or rules are available but are ignored by employees, the requisite knowledge of the employer is not established." Robinson v.Icarus Indus. Constructing Painting Co., 145 Ohio App.3d 256, 262,2001-Ohio-2207. In addition, Conduite argues that Ferryman admitted that no one ever saw him cleaning the machine while it was running, nor could any other employee say for certain that management observed this practice.
 {¶ 23} Appellants also argue that prior OSHA citations for inadequate guarding of rotating parts are evidence of Conduit's knowledge that an injury was substantially certain to occur on the screw machine. Evidence of OSHA citations may be considered in determining whether an accident was substantially certain to occur, and do not have to be violations for the machine that caused the injury. Miltenberger v. Exco Co., (Nov. 23, 1998), Butler App. CA98-04-087. However, even a relevant OSHA violation does not evidence the requisite intent unless there is an actual pre-accident citation. See Hamilton v. Mitchellace, Inc. (Jan. 6, 1990), Scioto App. No. 1783, 1990 WL 9941 (Harsha, J., concurring), citingSanek v. Duracote Corp. (1989), 43 Ohio St.3d 169, 172. A violation of a safety regulation does not, in itself, establish that injury was a substantial certainty. Miko v. Delphi Chassis, Montgomery App. No. 18940, 2002-Ohio-280. Although the court may consider an employer's lack of compliance with safety standards, a trier of fact may decide the weight to give such evidence in light of the other evidence presented. See id. OSHA violations are only one of many factors to be taken into consideration in determining whether harm was substantially certain to occur. Maddox v. L.O. Warner, Inc. (Feb. 7, 1996), Montgomery App. No. 15468. *Page 9 
 {¶ 24} In August 2002, Conduit received violation notices regarding some of its machines for not providing guarding and lockout procedures. Although these violations were not based on the machine that injured Ferryman, appellants argue that the citations establish knowledge on the part of Conduit that unguarded machinery and specifically rotating parts on the machinery, were dangerous and that there was a plant-wide problem. Appellants also argue that Conduit was cited by OSHA following Ferryman's accident for the failure to provide machine guarding to protect employees from hazards created by rotating parts.
 {¶ 25} Conduit contends that the prior citations it received for a lack of guarding involved a machine that had the guards off because it was under repair and not operational. It further contends that no violations for the machine involved in Ferryman's injury were issued during the prior OSHA inspection.
 {¶ 26} Finally, appellants argue that Conduit had knowledge of other injuries on screw machines. The presence or absence of prior injuries is also a factor to consider in determining whether an employer knew that an employee's injuries were substantially certain to occur. Erickson v.Trucks Parts of Ohio, Inc., Butler App. No. CA2002-04-006, 2003-Ohio-1267; see, also, Van Fossen, 36 Ohio St.3d at 118. Evidence of prior injuries is relevant even if it does not involve the exact injury at issue. Taulbee v. Adience, Inc. (1997), 20 Ohio App.3d 11. However, absence of a prior injury is not the sole factor in determining an employer's knowledge. Cook v. Cleveland Elec. Illum. Co. (1995),102 Ohio App.3d 417, 429.
 {¶ 27} There was evidence that an employee was injured and lost part of his hair in a screw machine in the 1970s or 1980s when he was cleaning out the shavings under a smaller version of the machine involved in Ferryman's injury. There was also evidence that a female employee was caught in a rotating part and her clothes were torn off in the machine and that a temporary employee also had clothes caught in a machine, although these injuries did not occur on the same machine or when the employee was performing cleaning of the machine *Page 10 
with the guard open. Conduit presented evidence to show that the prior injury in the 1970s or 1980s involved a machine that at the time did not have any guards at all and that back then there was no type of guarding on that machine. Conduit further argues that there were no prior injuries while cleaning the shavings out from under the screw machine with a guard.
 {¶ 28} Appellants argue that the totality of the above evidence creates a genuine issue of material fact regarding whether the employer was aware that an injury was substantially certain to occur. However, JSA, the manuals, the citations, prior injuries, and prior accidents show only that that Conduit was aware that the spindles were dangerous if an employee were to come in contact with them. Despite the expert's opinion to the contrary, the facts of this case do not demonstrate a substantial certainty that the accident would occur. Even if we accept that a guard with an interlock would have provided better safety, "the failure to provide available safety devices may constitute negligence or recklessness, but does not constitute substantial certainty." Teal v.Colonial Stair and Woodwork Co., Fayette App. No. CA2004-03-009,2004-Ohio-6246, ¶ 22.
 {¶ 29} Considering the totality of this evidence in a light most favorable to the appellants, we find no genuine issues of material fact regarding whether Conduit knew injury was substantially certain to occur. Although there was evidence presented that employees cleaned the machine while running with the guard open, there was no evidence that management specifically saw this occurring or that the employees were instructed to clean in this manner. Most of the employees, including Ferryman, admitted that the machine could be cleaned with the guard in place using the shovel. Employees testified that they cleaned the machine while running with the guard open. However, employees, including Ferryman, also testified that they also cleaned the machine with the guard closed and even with the machine shut off. At best, the evidence shows that employees sometimes cleaned the machine while running with the guard open and Conduit may have observed this practice and failed to *Page 11 
correct employees. This evidence, while it may establish negligence or even recklessness, does not rise to the level of substantial certainty.
 {¶ 30} As stated by the Sixth District, "[t]he difficult issue in any employer intentional tort case is the degree of risk the employer can take before its conduct is legally considered to be, or can legally be inferred to be, an intentional act to injure. The employee need not prove that the employer had an actual subjective intent to cause the injury sustained or that the employer knew that the exact injury sustained would occur. However, the mere knowledge and appreciation of a risk is not enough. The employee must prove that the employer knew that because of the exact danger posed, the employee would be harmed in some manner similar to the injury sustained or that the employer knew that because of the exact danger posed, it was highly probable (substantially certain) that the employee would be harmed in some manner similar to the injury sustained." Richie v. Rogers Cartage Co. (1993),89 Ohio App.3d 638.
 {¶ 31} "It must be emphasized that `[t]here are many acts within the business or manufacturing process which involve the existence of dangers, where management fails to take corrective action, institute safety measures, or properly warn the employees of the risks involved. Such conduct may be characterized as gross negligence or wantonness on the part of the employer. However, in view of the overall purposes of our Workers' Compensation Act, such conduct should not be classified as an "intentional tort" and therefore an exception * * * to the exclusivity of the Act.'" Sanek at 172-173, quoting Van Fossen v.Babcock Wilcox Co., 36 Ohio St.3d at 117. Therefore, the intentional tort cause of action is limited to egregious cases. Id. at 172.
 {¶ 32} Therefore, we find the evidence does not establish the second element of an employer intentional tort as appellants have not established that an injury was substantially certain to occur. *Page 12 
 {¶ 33} The third requirement a plaintiff must prove in an employer intentional tort case is that with knowledge that an accident was substantially certain to occur, the employer required the employee to continue to perform the dangerous task. Fyffe v. Jeno's, Inc., 59 Ohio St.3d at paragraph one of the syllabus. An employer does not have to specifically instruct employee to perform a task that is certain to result in harm and stand by idly as the situation unfolds. Brookover v.Flexmag Industries, Washington App. No 00CA49, 2002-Ohio-2404. The employer does not have to expressly order an employee to engage in the dangerous task. Gibson v. Drainage Prods., Inc., 95 Ohio St.3d 171,2002-Ohio-2008, ¶ 23; Hannah v. Dayton Power Light Co.,82 Ohio St.3d 482, 487, 1998-Ohio-408. Instead, in order to survive summary judgment, an employee must present evidence to show that through its actions and policies, the employer required the employee to engage in the dangerous task. Id.
 {¶ 34} Appellants argue that they produced evidence of this requirement to create a genuine issue of material fact because production was an issue and because Conduit never warned or reprimanded employees for cleaning the machines while they were running.
 {¶ 35} With the issue of production, appellants argue that there was pressure on the employees for high productivity and that shutting down the machine would cause long delays. They argue that it was an "expected protocol" that employees must clean the machine while running and that Conduit failed to install interlocks on the machine to facilitate higher productivity.
 {¶ 36} However, even viewing the evidence in a light most favorable to appellants, there is no genuine issue of material fact with regard to this requirement. The evidence shows that employees were never specifically instructed to clean the machines in this manner and therefore, there is no direct evidence that the employees were required to perform this task. *Page 13 
 {¶ 37} While at least one employee testified that production was an issue and shutting down the machines would slow down production, Ferryman himself stated that he had no idea what would happen if they did not meet production because they never failed to meet their production level. He stated that even if the machine had to be shut off, they would still be close to their piece rate for the machine. The plant manager testified that the piece calculations had down-time factored into the production rate. Other employees testified that there was no push to increase production and that they were never told that shutting off the machine would affect their production levels.
 {¶ 38} Although it is certainly possible for an employer to create an atmosphere where employees feel compelled to perform a task in an unsafe manner although not specifically instructed by the employer, the evidence in this case does not rise to that level. Accordingly, we find that the evidence does not establish that employees were required to perform a dangerous task.
 {¶ 39} As the evidence does not establish the second or third prong of the test for establishing an employer intentional tort, the trial court did not err in granting summary judgment to Conduit.
 {¶ 40} Judgment affirmed.
BRESSLER and WALSH, JJ., concur.
[1] The complaint also included causes of action against other parties not relevant to this appeal.
[2] R.C. 2745.01, effective April 7, 2005, now governs an employer's liability for intentional torts. The statute provides that in an action for intentional tort, an employee must prove that "the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur." The statute defines "substantial certainty" to mean "that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death." R.C. 2745.01(B). Prior versions of statutes aimed at employer intentional tort actions were found unconstitutional by the Ohio Supreme Court. See Johnson v. BP Chemicals, Inc.,85 Ohio St.3d 298, 1999-Ohio-267. Because the accident in this case occurred prior to the enactment of the current statute, this case is governed by the standard set forth in Fyffe. *Page 1