OPINION
{¶ 1} Plaintiffs-appellants, Maximo J. Rijo, et al.,[1] appeal a decision of the Butler County Court of Common Pleas granting summary judgment in favor of Rijo's former employer, defendant-appellee, Reading Rock, Inc., as to Rijo's intentional tort claim.
 {¶ 2} Reading Rock is a masonry manufacturer located in West Chester, in *Page 2 
Butler County, Ohio. The company manufactures materials such as block, cast stone, pavers, and retaining walls. Reading Rock employed Rijo as a "floater" or laborer from July 2004 to November 2005. His duties included cleaning areas around the company's manufacturing machines and informing his supervisor when the machines jammed.
 {¶ 3} On October 11, 2004, Rijo noticed that the depalleter machine[2] was jammed. He notified his supervisor, James Reisinger, of the jam, and Reisinger told Rijo to assist him in clearing it. Reisinger pushed the emergency stop button on the main control panel which turned off the depalleter machine, and he and Rijo cleared the jam. However, the depalleter machine was not "locked out."[3]
 {¶ 4} After Reisinger and Rijo cleared the jam, Rijo looked into the machine to see if he could determine what had caused it to jam. As he did so, Rijo placed his hand on the machine just as Reisinger re-started it. A pinch point on the machine caught two of Rijo's fingers on his left hand, amputating a portion of his ring finger and permanently damaging his middle finger.
 {¶ 5} On October 7, 2005, Rijo and his son, Christopher, filed a complaint against Reading Rock in the Butler County Court of Common Pleas, raising claims of intentional tort, punitive damages, and loss of consortium. On December 15, 2006, Reading Rock moved for summary judgment on Rijo's and Christopher's claims. On February 15, 2007, Rijo and his son filed a motion in opposition to Reading Rock's summary judgment motion.
 {¶ 6} On August 29, 2007, the trial court issued a decision and entry granting Reading Rock's motion for summary judgment after finding that Rijo failed to establish that a *Page 3 
genuine issue of material fact existed as to the second and third elements of the test for establishing an intentional tort claim, set forth in Fyffe v. Jenos, Inc. (1991), 59 Ohio St.3d 115.
 {¶ 7} Rijo now appeals, raising the following assignment of error:
 {¶ 8} Assignment of Error No. 1:
 {¶ 9} "THE COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANT."
 {¶ 10} Rijo argues that the trial court erred in granting Reading Rock's motion for summary judgment on his intentional tort claim because he presented sufficient evidence to establish a genuine issue of material fact as to all three elements of the Fyffe test for establishing such a claim. We disagree with this argument.
 {¶ 11} This court reviews a trial court's decision to award summary judgment de novo, which means we use the same standard the trial court should have used and review the trial court's decision independently and without deference to it. Myers v. Encompass Indemn. Co.,169 Ohio App.3d 545, 2006-Ohio-6076, ¶ 6.
 {¶ 12} "Pursuant to Civ. R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." Zivich v. Mentor Soccer Club,Inc., 82 Ohio St.3d 367, 369-370, 1998-Ohio-6076, quoted inMyers at ¶ 7.
 {¶ 13} "Generally, actions for injuries sustained in the course of employment must be addressed within the framework of Ohio's workers' compensation statutes. Blankenship v. Cincinnati Milacron Chemicals,Inc. (1982), 69 Ohio St.2d 608, 614. However, an exception to this rule exists where the employer's conduct is sufficiently `egregious' to constitute an *Page 4 
intentional tort and in that instance, an employee may institute a tort action against the employer. See Sanek v. Duracote Corp. (1989),43 Ohio St.3d 169, 172." Ferryman v. Conduit Pipe Prods. Co., Madison App. No. CA2007-02-007, 2007-Ohio-6417, ¶ 6.
 {¶ 14} Where a plaintiff brings an intentional tort claim against his employer for a workplace injury that occurred prior to April, 7, 2005,[4] the plaintiff must establish the employer's "intent" by showing: "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Fyffe v. Jeno's, Inc.
(1991), 59 Ohio St.3d 115, paragraph one of the syllabus.
 {¶ 15} The Fyffe court discussed the type and amount of evidence needed to prove an intentional tort claim and defined the meaning of "substantial certainty" as follows:
 {¶ 16} "To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or *Page 5 
substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge andappreciation of a risk-something short of substantial certainty-is notintent." (Emphasis added.) Fyffe, 59 Ohio St.3d at paragraph two of the syllabus.
 {¶ 17} In Gibson v. Drainage Prods., Inc., 95 Ohio St.3d 171,2002-Ohio-2008, the court discussed the type and amount of evidence that a plaintiff needs to present to establish the third element of theFyffe test:
 {¶ 18} "[F]or purposes of surviving a motion for directed verdict [or summary judgment], it is not necessary for an employee to show that the employer expressly ordered the employee to engage in the dangerous task. Instead, the third element of the Fyffe test can be satisfied by presenting evidence that raises an inference that the employer, through its actions and policies, required the employee to engage in that dangerous task. Moreover, * * * a jury issue arises concerning the third element of the Fyffe test when sufficient credible evidence is presented that the employer merely expected the employee to engage in a dangerous task." Id. at ¶ 24.
 {¶ 19} In this case, the trial court found that a genuine issue of material fact existed as to the first element of the Fyffe test because there was sufficient evidence to show that Reading Rock knew of a dangerous procedure at its workplace, namely, its failure to follow safety and training procedures with respect to the depalleter machine. See Fyffe, 59 Ohio St.3d at paragraph one of the syllabus.
 {¶ 20} However, the trial court found that Rijo failed to establish the existence of a genuine issue of material fact as to the second element of the Fyffe test because he did not show that Reading Rock knew that Rijo's injury was substantially certain to occur. The trial court also found that Rijo failed to establish the third element of theFyffe test because he failed to show that Reading Rock required Rijo to determine the cause of the jam in the *Page 6 
depalleter machine or to place his hand on the machine in the location and manner he chose to on the day he was injured. Id.
 {¶ 21} Rijo argues that when the evidence is examined in a light most favorable to him as the nonmoving party as it must be for summary judgment purposes, see Zivich, 82 Ohio St.3d at 369-370, there was sufficient evidence presented to demonstrate that a material issue of genuine fact existed as to the second and third elements of theFyffe test.
 {¶ 22} In support, Rijo first contends that the trial court erred in finding that certain documents from the Occupational Safety and Health Administration's website had not been properly authenticated and therefore were not properly before it. However, the trial court found that even when these documents were considered, they did not change the court's view that Rijo failed to establish all of the elements of theFyffe test. A review of the documents supports the trial court's conclusion.
 {¶ 23} The documents in question involve two prior citations that OSHA issued to Reading Rock for its failure to lockout or tagout certain machines in its facilities. Rijo asserts that both of these violations led to one of Reading Rock's employees being injured. However, Rijo has failed to cite any evidence of these injuries, including what the injuries were or how they occurred, nor has he explained why these prior incidents should have put Reading Rock on notice that it needed to lockout the depalleter machine when it was being cleared after it had jammed.
 {¶ 24} Rijo also argues that Reading Rock failed to adequately train him on the company's lockout or tagout procedures. He asserts that because his injury is the type that such training is designed to prevent, the occurrence of his injury was a substantial certainty underFyffe. However, this court has found that while inadequate training may constitute negligence or recklessness on an employer's part, it does not prove that the employer knew that an injury was substantially certain to occur. Davis v. AK Steel, Butler App. No. CA2005-07-183, *Page 7 2006-Ohio-596, ¶ 12.
 {¶ 25} There was also no evidence in this case that an employee at Reading Rock had been injured while helping to clear a jam in the depalleter machine on a prior occasion. See Wadley v. Knowlton Mfg.Co., Hamilton App. No. C-061045, 2007-Ohio-5739, ¶ 20 (because no other employee had suffered an injury similar to plaintiff's, employer did not have knowledge that its employees' training was inadequate). In fact, Rijo himself acknowledged that no employee at Reading Rock had been injured by the depalleter machine on a previous occasion, even though the depalleter machine frequently jams in Reading Rock's manufacturing process.
 {¶ 26} Additionally, Reading Rock did have several safety procedures in place for the depalleter machine. For instance, there was a sign posted at the depalleter machine that warned employees not to put their fingers into the machine's moving parts. Reading Rock also had a procedure requiring its employees to use the emergency stop button to stop the depalleter machine prior to clearing it of any jam. While Reading Rock could have had better safety devices and procedures in place, and its failure to do so may have constituted negligence or even recklessness, the absence of better safety devices and procedures does not amount to knowledge on Reading Rock's part that Rijo's injuries were substantially certain to occur. See Ferryman, 2007-Ohio-6417 at ¶ 28.
 {¶ 27} As the Ohio Supreme Court has stated:
 {¶ 28} "It must be emphasized that `[t]here are many acts within the business or manufacturing process which involve the existence of dangers, where management fails to take corrective action, institute safety measures, or properly warn the employees of the risks involved. Such conduct may be characterized as gross negligence or wantonness on the part of the employer. However, in view of the overall purposes of our Workers' Compensation Act, such conduct should not be classified as an `intentional tort' and therefore *Page 8 
an exception * * * to the exclusivity of the Act.'" Sanek,43 Ohio St.3d at 172, quoting Van Fossen v. Babcock Wilcox Co. (1988),36 Ohio St.3d 100, 117.
 {¶ 29} Rijo also asserts that a genuine issue of material fact exists as to the third element of the Fyffe test because a reasonable jury could find under the evidence presented that it was his job not only to clear the depalleter machine when it jammed, but to determine what caused the machine to jam.
 {¶ 30} However, there was no evidence to show that Reading Rock required or expected Rijo to attempt to determ ine the reason for the jam in the depalleter machine or that Reading Rock should have known that Rijo would put his hand on the machine while his supervisor started it since it was not Rijo's responsibility to decide how the jam in the depalleter machine would be cleared or otherwise repaired. Thus, Rijo also failed to establish the third element of the Fyffe test.[5]
 {¶ 31} Rijo's assignment of error is overruled.
 {¶ 32} Judgment affirmed.
YOUNG and POWELL, JJ., concur.
[1] The other appellant in this case is Rijo's son, Christopher. For ease of reference, we shall refer to Maximo Rijo as "Rijo," and Christopher Rijo as "Christopher."
[2] The depalleter machine removes concrete blocks from a pallet and then moves them on toward a "cuber" for further processing.
[3] "Lockout" or "tagout" is a procedure whereby an employee at Reading Rock would place a lock on a machine during its servicing or maintenance so that no other employee could start the machine while the first employee was working on it.
[4] Effective April 7, 2005, R.C. 2745.01 "now governs an employer's liability for intentional torts. The statute provides that in an action for intentional tort, an employee must prove that `the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.' The statute defines `substantial certainty' to mean `that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.' R.C. 2745.01(B). Prior versions of statutes aimed at employer intentional tort actions were found unconstitutional by the Ohio Supreme Court. See Johnson v. BP Chemicals, Inc.,85 Ohio St.3d 298, 1999-Ohio-267." Ferryman, 2007-Ohio-6417, at fn. 2. Just as inFerryman, the accident in this case occurred prior to the enactment of R.C. 2745.01; therefore, this case is governed by the standard set forth in Fyffe. See Ferryman at fn. 2.
[5] Reading Rock argues that the trial court erred by finding that there was sufficient evidence presented to establish a material issue of fact with respect to the first element of the Fyffe test. However, since we are overruling Rijo's assignment of error, we need not address this argument. *Page 1