[Cite as *State v. Dowdle*, 2016-Ohio-485.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 2015CA00119 |
| | : | |
| RANDY LEE DOWDLE | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Stark County Court of
                             Common Pleas, Case No. 2014CR2111



JUDGMENT:                     AFFIRMED



DATE OF JUDGMENT ENTRY:       February 9, 2016



APPEARANCES:

For Plaintiff-Appellee:                 For Defendant-Appellant:

JOHN D. FERRERO, JR.                    RODNEY A. BACA
STARK CO. PROSECUTOR                    610 Market Ave. N.
RENEE M. WATSON                         Canton, OH 44702
110 Central Plaza South, Ste. 5110
Canton, OH 44702-1413

*Delaney, J.*

{¶1}   Appellant Randy Lee Dowdle appeals from the June 9, 2015 Judgment Entry of the Stark County Court of Common Pleas convicting and sentencing him upon one count of breaking and entering.  Appellee is the state of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶2}   Appellant is a member and longtime patron of the Slovak Home Club, a bar and party hall in Canton, Ohio.  Members of the Club use a swipe card to enter a locked main entrance.  Appellant's home is a very short walking distance from the Club.  Nancy is the manager of the Club, and Brenda and Erica are employees there.  All three women are very familiar with appellant and have frequently served him in the Club; appellant comes in at least two or three times a week.

{¶3}   On Friday, December 5, 2014, all three women were at the Club at various times during the day and evening.  Nancy was working and Brenda and Erica were decorating the hall for a party.  There were about 25 or 30 patrons in the Club throughout the afternoon and evening.  All three women noticed appellant in the Club that day; he arrived around 2:30 p.m.  All three women saw appellant drinking throughout the afternoon and playing the Club's "Puzzle Bug" machine, a tabletop video "skills game."[1] None of the women saw appellant leave the Club that evening, although Erica saw him heading in the direction of the restroom around 10:00 p.m. and assumed he was leaving.

---

[1] Nancy testified patrons pay money to play the "Puzzle Bug" machine and the money is emptied once per week.  The machine usually contains two to three thousand dollars. Appellant testified he spent about forty dollars on the machine that day in small increments.  Nancy testified patrons win "gas cards" from the machine.

{¶4}   Nancy and Brenda were together around 11:15 p.m. as Nancy closed the Club, rang out the register, placed cash in the safe, locked the door, and put the alarm on.  The employees testified it was customary to check the bar area and restrooms before locking up, but there are areas in the Club where someone could hide that would not be checked, including an old kitchen and an upstairs area.

{¶5}   The next day, around 2:30 p.m., Nancy returned to the Club to unlock and open up.  She found the door already unlocked.  When she entered the Club, she discovered the Puzzle Bug machine was missing.  She called Erica and asked whether she had been to the Club because it appeared there had been a break-in.  Erica had not yet been to the Club that day.

{¶6}   The Slovak Home Club has a number of security cameras in place that record 24 hours a day, 7 days a week.  Recorded areas include the bar inside, the outside of the Club, and the stairwell leading to the main entrance.  The area where the Puzzle Bug was kept is not covered by the cameras.  Upon discovering the break-in, Nancy, Erica, and Brenda viewed the videotape of the afternoon and evening of December 5, 2014.  On the tape, all three women observed appellant arrive at the Club around 2:30 in the afternoon; the tape also showed appellant helping the Club's "beer rep" bring in a delivery that afternoon.  The tape never showed appellant leave the Club, however.  At 11:23 p.m., the tape showed Nancy, Brenda, and Brenda's son leaving the Club and locking up.  Then, at 12:02 a.m., the tape reveals someone still inside the Club.

{¶7}   The tape showed a person come up from the bar area, unlock the door, come back down, and then walk out the door carrying the Puzzle Bug machine.  Nancy, Erica, and Brenda unequivocally identified the person on the tape as appellant: he wore

the same clothes throughout the video as when the women observed him drinking and playing the machine throughout the afternoon, although his jacket appeared to be inside out.

{¶8} After the theft was discovered, Erica called appellant and told him the Club only wanted the machine back, no questions asked. Appellant said he had no idea what she was talking about. Nancy also confronted appellant at a restaurant and he denied taking the machine.

{¶9} Detective Pierson of the Canton Police Department took a report on December 8, 2014, and took the Club's videotape into evidence. At trial, Pierson identified appellant as the person on the video who walks out of the Club with the machine.

{¶10} Appellant testified on his own behalf and claimed he arrived at the Club around 3:30, drank and played the Puzzle Bug for about two hours, and left the Club around 5:30 or 6:00 p.m. He claimed he never returned to the Club that day. He identified himself on the video arriving at the Club and had no explanation why the tape never showed him leave. He denied being the person on the video seen in the Club after it was closed and carrying the Puzzle Bug machine out the main entrance. He said he couldn't have carried the machine because at the time of the break-in he was recovering from a broken foot. Appellant also testified his home was searched and law enforcement did not find the machine, although it was unclear whether law enforcement entered his home on an arrest or search warrant and whether a search warrant was ever executed.

{¶11} Appellant was charged by indictment with one count of breaking and entering pursuant to R.C. 2911.13(A), a felony of the fifth degree. Appellant entered a plea of not guilty and the case proceeded to trial by jury. Appellant was found guilty as

charged and the trial court sentenced him to three years of community control including a jail term of 30 days.

{¶12} Appellant now appeals from the judgment entry of his conviction and sentence.

{¶13} Appellant raises one assignment of error:

**ASSIGNMENT OF ERROR**

{¶14} "I.　THE CONVICTIONS OF THE TRIAL COURT ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO PROVE THE CONVICTION BEYOND A REASONABLE DOUBT."

**ANALYSIS**

{¶15} In his sole assignment of error, appellant argues his conviction upon one count of breaking and entering is against the manifest weight and sufficiency of the evidence.　We disagree.

{¶16} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.　*State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus.　The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.　The relevant inquiry is whether, after

viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶17} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." Id.

{¶18} Appellant was convicted upon one count of breaking and entering pursuant to R.C. 2911.13(A), which states: "No person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense, as defined in section 2913.01 of the Revised Code, or any felony." Appellant's argument on appeal is the same as his argument at trial pitting his credibility against that of appellee's witnesses: he denies stealing the Puzzle Bug, denies he is the individual shown carrying the machine out of the Club on the video, and argues the machine was not found at his residence two weeks after the break-in.

{¶19} Appellant argues the finder of fact should have afforded his testimony greater weight than that of the three Club employees, the detective, and the videotape the jurors viewed themselves. The weight of the evidence and the credibility of the witnesses are determined by the trier of fact. *State v. Yarbrough*, 95 Ohio St.3d 227, 231,

2002-Ohio-2126, 767 N.E.2d 216, ¶ 79.  Appellant has not presented any reason why the jury should not have given more weight to the unequivocal testimony of appellee's witnesses as buttressed by the videotape.  Nor does he point to any evidence in the record that the jury lost its way and committed a manifest miscarriage of justice.  The jury could reasonably watch the video and determine whether appellant, who admitted his identity in the earlier portion of the video, is the same person shown carrying the Puzzle Bug out of the Club after the Club was closed and locked.

{¶20} Appellant's conviction of breaking and entering is supported by sufficient evidence and this is not the "exceptional case in which the evidence weighs heavily against [appellant's] conviction."

{¶21} Appellant's sole assignment of error is overruled.

**CONCLUSION**

{¶22} Appellant's sole assignment of error is overruled and the judgment of the

Stark County Court of Common Pleas is affirmed.

By: Delaney, J. and

Hoffman, P.J.

Baldwin, J., concur.