[Cite as *State v. McCabe*, 2016-Ohio-5892.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 15CA73 |
| CHRISTOPHER MCCABE | |
| Defendant-Appellant | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Richland County Common Pleas Court, Case No. 2015-CR-0190 D |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | September 19, 2016 |
| APPEARANCES: | |

| For Plaintiff-Appellee | For Defendant-Appellant |
|---|---|
| BAMBI COUCH PAGE<br>Prosecuting Attorney<br>Richland County, Ohio | CHRISTOPHER MCCABE, PRO SE<br>Inmate No. 672219<br>Mansfield Correctional Institution<br>P.O. Box 788 |
| By: DANIEL M. ROGERS<br>Assistant Prosecuting Attorney<br>Richland County Prosecutor's Office<br>38 S. Park Street<br>Mansfield, Ohio 44902 | 1150 North Main Street<br>Mansfield, Ohio 44901 |

*Hoffman, J.*

{¶1}   Defendant-appellant Christopher A. McCabe appeals his conviction and sentence entered by the Richland County Court of Common Pleas, on one count of kidnapping, in violation of R.C. 2905.01(A)(2), a felony of the first degree; and one count of felonious assault, in violation of R.C. 2903.11(A)(1), a felony of the second degree, following a jury trial.  Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE CASE AND FACTS

{¶2}   Appellant failed to provide this Court with a Statement of the Case or a Statement of the Facts as required by App. R. 16(A)(5) and (6).  Accordingly, we accept the state's recitation.

{¶3}   On March 10, 2015, the Richland County Grand Jury indicted Appellant on one count of kidnapping, in violation of R.C. 2905.01(A)(2), a felony of the first degree; one count of aggravated robbery, in violation of R.C. 2911.01(A)(1), a felony of the first degree; and one count of felonious assault, in violation of R.C. 2903.11(A)(1), a felony of the second degree.  The charges stemmed from the February 1, 2015 attack of Mario Jester in Jester's home at 101 West 4th Street, Mansfield, Richland County, Ohio.  Appellant entered a plea of not guilty to the Indictment at his arraignment on March 24, 2015.  The trial court appointed Attorney George Keyser as trial counsel for Appellant.

{¶4}   On April 3, 2015, the trial court scheduled a final pretrial for April 13, 2015, and a jury trial for April 30, 2015.  Appellant filed a motion to continue the April 13, 2015 final pretrial, which the trial court granted.  On April 27, 2015, Appellant filed a motion to continue the trial as well as a motion for a transcript at the state's expense.  The trial court granted both motions, and continued the jury trial to June 4, 2015.  Appellant filed a

precipe for subpoena, requesting Angela Riley and Jeff Partin be subpoenaed to testify on Appellant's behalf. The subpoenas were returned and filed on May 29, 2015.

{¶5} The trial court continued the jury trial to July 9, 2015. Appellant filed a second precipe for subpoena for Riley and Partin. Those subpoenas were returned and filed on June 22, 2015. The state filed a Bill of Particulars and Notice of Intent to Use Evidence and Jail Calls on July 6, 2015. Appellant filed a precipe for subpoena for Rene Tucker on July 7, 2015. Appellant indicated Attorney Keyser would serve the subpoena on Tucker. Appellant filed a motion in limine, seeking a ruling on the admissibility of a recorded telephone call between Appellant and his mother on February 16, 2015. Appellant also filed a notice of intent to use evidence and precipe for subpoena for Lt. James Myers.

{¶6} The jury trial commenced on July 10, 2015. Prior to jury selection, Appellant advised the trial court he wished to represent himself and participate in voir dire. The trial court told Appellant Attorney Kesyser would participate in voir dire on Appellant's behalf in order to avoid jury intimidation and due to fact the trial court had no notice of Appellant's desire to represent himself.

{¶7} During voir dire, the trial court learned eight of the potential jurors had served in cases before the court in the previous few weeks. All eight of the jurors indicated their prior jury service would not affect their ability to be fair and impartial in Appellant's case. All eight of the jurors were passed for cause. Appellant exercised three of his preemptory challenges, but did not utilize his preemptory challenges on any of those eight jurors. Three of the eight jurors who had previously served were selected to serve on Appellant's jury.

**{¶8}** The following evidence was adduced at trial. At approximately 9:00 a.m. on February 1, 2015, Mario Jester encountered Appellant at Richland Bank located on the intersection of Park and Marion Avenues in Mansfield, Ohio. Later that evening, Jester again encountered Appellant while he (Jester) was walking to his residence at 101 W. 4th Street. Jester, who had met Appellant a year earlier and who had welcomed Appellant into his home on one or two prior occasions, invited Appellant to join him at a Super Bowl party at the home of his friend, Robert Ware, located at 96 South Mulberry Street. Appellant accepted Jester's invitation. The two men arrived at Ware's home shortly before the 6:30 p.m. kickoff. While watching the game, Appellant, who had been drinking alcohol, stated he wanted to score some drugs and became aggressive with one of the other guests at the party.

**{¶9}** At approximately 9:30 p.m., Appellant asked Jester if they could leave the party and return to Jester's residence. Jester agreed and the two men proceeded to Jester's home. During the walk, Appellant stopped at an ATM machine. Appellant told Jester he had no money, and needed to wait until after midnight until his check cleared. Jester agreed to let Appellant stay at his residence until Appellant's check cleared and he had access to money in order to pay for a cab ride back to his home in Tiffin, Ohio.

**{¶10}** While at Jester's residence, Jester and Appellant continued to drink alcohol and watch the Super Bowl. Appellant began to pressure Jester to obtain drugs, but Jester refused. Jester fell asleep in his recliner at approximately 11:00 p.m.

**{¶11}** After Jester fell asleep, Appellant struck Jester with a wooden butcher block he took from the kitchen. The blow caused a six inch gash on the back of Jester's head. Jester woke up with blood gushing from his head. Appellant tied Jester's hands behind

his back with a bed sheet, laid Jester on the floor, and searched Jester's pockets. Appellant then ordered Jester into the bedroom and onto the bed, face down. Appellant went into the bathroom, placed the butcher block on the side of the vanity and washed his hands. At some point, Jester's pit bull charged Appellant and started barking. Appellant fled the residence.

{¶12} Several minutes later, Jester got off the bed and walked to a neighbor's house to get help. Jester's neighbor called 911. Mansfield Police Officer Jared Kingsborough responded to Jester's home at 11:30 p.m. Paramedics arrived minutes later and transported Jester to Mansfield MedCentral.

{¶13} After Officer Kingsborough obtained a key from Jester's landlord, he and Officers Soehnlen and Telquist searched Jester's residence. The officers observed blood on the side of the recliner, blood on the floor next to the recliner, a shard of wood from the butcher block on the floor next to the recliner, a kitchen knife on a table next to the recliner, the butcher block on the bathroom vanity, and several ounces of blood on a pillowcase. The officers did not find any firearms or signs of struggle. The officers photographed the scene as well as the evidence. They collected the butcher block, shard of wood, bloody pillowcase, and kitchen knife which were submitted to the crime lab.

{¶14} Thereafter, Officers Soehlen and Telquist proceeded to MedCentral to speak with Jester. The officers photographed Jester, whose t-shirt was soaked in blood and who still had a piece of bed sheet wrapped around his right wrist. The officers collected the t-shirt and a piece of the bed sheet. Due to the severity of Jester's injuries, Officers Soehlen and Telquist did not take a statement from him. The gash on the back

of Jester's head required fourteen staples, and damage to his right ear required three staples.

{¶15} After fleeing Jester's residence, Appellant proceeded to Harmony House in Mansfield, where he spent the night. Appellant advised the staff of Harmony House he had been stranded by friends.

{¶16} On February 5, 2015, Detective William Bushong of the Mansfield Police Department obtained a tape statement from Jester. Jester, who fully cooperated with the detective, recounted the assault, identified his attacker as "Chris", and provided a physical description of his attacker which matched Appellant. Jester's girlfriend provided the Mansfield Police Department with Appellant's identification card which was recovered from Jester's residence. After receiving Appellant's identification card, Detective Bushong contacted Appellant's probation officer in Tiffin, Ohio, who advised the detective Appellant was in the Seneca County Jail.

{¶17} On February 9, 2015, Officer Telquist traveled to the Seneca County Jail to pick up Appellant and transport him to the Richland County Jail. During the transport to the Richland County Jail, Appellant claimed he had no idea why he had a warrant from Richland County and never mentioned interacting with Jester. When he arrived at the Richland County Jail, Appellant had no visible injuries and did not report any injuries. During a February 16, 2015 telephone conversation with his mother while he was in the Richland County Jail, Appellant admitted he assaulted Jester, but claimed he acted in self-defense.

**{¶18}** After hearing all the evidence and deliberating, the jury found Appellant not guilty of aggravated robbery, but guilty of kidnapping and felonious assault. The trial court scheduled a sentencing hearing for July 14, 2015.

**{¶19}** The trial court sentenced Appellant to eight years on the kidnapping count and eight years on the felonious assault count. The trial court ordered the sentences to run concurrently with each other and consecutively to two years of post-release control in a 2013 case, for a cumulative prison term of ten years. The trial court also imposed five years of mandatory post-release control, and ordered Appellant to pay $40 in restitution.

**{¶20}** The trial court appointed Attorney Dale Musilli as appellate counsel. Appellant filed a timely Notice of Appeal to this Court.

**{¶21}** Appellant requested an extension of time with the trial court, requesting additional time to transmit the record. The trial court granted Appellant until November 9, 2015, to transmit the record. Attorney Musilli filed a motion to withdraw as counsel on October 10, 2015, which the trial court granted. The trial court appointed Attorney William Cramer.

**{¶22}** On November 9, 2015, Appellant filed a motion for extension of time to transmit the record with this Court. This Court granted Appellant until December 9, 2015, to transmit the record. On December 7, 2015, this Court issued a Notice of Filing Transcript.

**{¶23}** Appellant filed a motion for extension of time to file his brief on December 28, 2015. The Court granted the motion, ordering Appellant to file his brief no later than January 19, 2016. On January 15, 2016, Attorney Cramer filled a motion to withdraw based upon Appellant's desire to proceed pro se. This Court denied Attorney Cramer's

motion as he failed to comply with Loc. R. 3. On February 1, 2016, Attorney Cramer filed a second motion to withdraw as well as a motion to enlarge time in which to file Appellant's brief. This Court granted both motions, and ordered Appellant to file his pro se brief no later than March 18, 2016.

{¶24} On February 29, 2016, Appellant filed a request for copy of transcript with this Court and a motion for preparation of complete transcript of proceedings at state's expense with the trial court. The trial court overruled Appellant's motion, but ordered Attorney Cramer to turn over to Appellant the copy of the transcript which he had previously been provided. Appellant filed a request for an extension of time to file his brief with this Court on March 8, 2016. On March 14, 2016, Attorney Cramer filed a notification the transcript had been transmitted to Appellant. This Court granted Appellant's motion for extension of time, and ordered Appellant to file his brief no later than April 18, 2016. Appellant filed a second motion for extension of time, which this Court granted, ordering Appellant to file his brief no later than May 18, 2016.

{¶25} Appellant filed a motion to provide audio recordings of trial proceedings with this Court on April 26, 2016. In his motion, Appellant claimed there were discrepancies in the trial transcript he had received from Attorney Cramer. Appellant filed his brief with this Court on May 17, 2016, but failed to provide the required number of copies and failed to serve the state. This Court subsequently overruled Appellant's motion to provide audio recordings of trial proceedings.

{¶26} Appellant assigns the following as error:

{¶27} "I. ERROR OF LAW IN JURY SELECTION:

**{¶28}** "(A) JURORS SERVING ON MULTIPLE JURIES, ASSUMING AN UNPROFESSIONAL RELATIONSHIP WITH THE TRIAL COURT.

**{¶29}** "(B) DENYING PRO SE DEFENDANT HIS RIGHT TO PARTICIPATE IN JURY SELECTION, LIMITING VOIR DIRE.

**{¶30}** "II. PROSECUTORIAL MISCONDUCT:

**{¶31}** "PROSECUTING ATTORNEY KNOWINGLY WITHHELD EVIDENCE AND TAMPERED WITH THE EVIDENCE.

**{¶32}** "III. SUFFICIENCY OF THE EVIDENCE:

**{¶33}** "APPELLANT MCCABE'S CONVICTION VIOLATES THE UNITED STATE CONSTITUTION BECAUSE THE EVIDENCE AT TRIAL IS INSUFFICIENT TO PROPERLY SUPPORT THE CONVICTION.

**{¶34}** "IV. MANIFEST WEIGHT OF THE EVIDENCE:

**{¶35}** "APPELLANT MCCABE'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL.

**{¶36}** "V. DENIAL OF COMPULSION:

**{¶37}** "APPELLANT MCCABE'S CONVICTION IS UNCONSTITUTIONAL BECAUSE HE WAS DENIED HIS RIGHT TO CALL FORTH WITNESSES IN FAVOR OF HIS DEFENSE."

**{¶38}** We begin by noting Appellant has failed to comply with App. R. 16.

**{¶39}** App. R. 16(A) provides:

The appellant shall include in its brief, under the headings and in the order indicated, all of the following:

(1) A table of contents, with page references.

(2) A table of cases alphabetically arranged, statutes, and other authorities cited, with references to the pages of the brief where cited.

(3) A statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected.

(4) A statement of the issues presented for review, with references to the assignments of error to which each issue relates.

(5) A statement of the case briefly describing the nature of the case, the course of proceedings, and the disposition in the court below.

(6) A statement of the facts relevant to the assignments of error presented for review, with appropriate references to the record * * *

(7) An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary.

(8) A conclusion briefly stating the precise relief sought.

**{¶40}** Appellant's brief does not satisfy the requirements of App. 16(A); therefore, is noncompliant. Absent minimal compliance with App. R. 16(A), this Court cannot reasonably respond to Appellant's claims, and may, in its discretion, disregard those claims. See, *Foster v. Board of Elections* (1977), 53 Ohio App. 2d 213, 228. Such deficiencies are tantamount to failure to file a brief. Although this Court has the authority under App. R. 18(C) to dismiss an appeal for failure to file a brief, we elect not to do so in this case.

**{¶41}** Furthermore, Appellant's brief does not contain an acknowledgment of service or a proof of service upon the state as required by App. R. 13. Pursuant to App. R. 13(D), this Court cannot consider any pleading which does not contain "an acknowledgment of service by the person served or proof of service in the form of a statement of the date and manner of service and of the names of the persons served, certified by the person who made service." Despite Appellant's failure, we elect to proceed to address his assignments of error.

I

**{¶42}** In his first assignment of error, Appellant contends the trial court erred by permitting three jurors who had previously served on juries in the same court to serve on the jury in his case. Appellant also asserts the trial court improperly prohibited him from participating in voir dire.

**{¶43}** With respect to the Appellant's first claim, we find the trial court did not err in permitting three jurors who had previously served on juries to serve on Appellant's jury. R.C. 2313.17(B) and Crim. R. 24(C) set forth the bases for challenging prospective jurors for cause. R.C. 2313.17(B) specifically provides:

(B) The following are good causes for challenge to any person called as a juror:

(1) That the person has been convicted of a crime that by law renders the person disqualified to serve on a jury;

(2) That the person has an interest in the cause;

(3) That the person has an action pending between the person and either party;

(4) That the person formerly was a juror in the same cause;

(5) That the person is the employer, the employee, or the spouse, parent, son, or daughter of the employer or employee, counselor, agent, steward, or attorney of either party;

(6) That the person is subpoenaed in good faith as a witness in the cause;

(7) That the person is akin by consanguinity or affinity within the fourth degree to either party or to the attorney of either party;

(8) That the person or the person's spouse, parent, son, or daughter is a party to another action then pending in any court in which an attorney in the cause then on trial is an attorney, either for or against any such party to another such action;

(9) That the person discloses by the person's answers that the person cannot be a fair and impartial juror or will not follow the law as given to the person by the court.

{¶44} Likewise, Crim. R. 24(C) provides:

(C) Challenge for Cause. A person called as a juror may be challenged for the following causes:

(1) That the juror has been convicted of a crime which by law renders the juror disqualified to serve on a jury.

(2) That the juror is a chronic alcoholic, or drug dependent person.

(3) That the juror was a member of the grand jury that found the indictment in the case.

(4) That the juror served on a petit jury drawn in the same cause against the same defendant, and the petit jury was discharged after hearing the evidence or rendering a verdict on the evidence that was set aside.

(5) That the juror served as a juror in a civil case brought against the defendant for the same act.

(6) That the juror has an action pending between him or her and the State of Ohio or the defendant.

(7) That the juror or the juror's spouse is a party to another action then pending in any court in which an attorney in the cause then on trial is an attorney, either for or against the juror.

(8) That the juror has been subpoenaed in good faith as a witness in the case.

(9) That the juror is possessed of a state of mind evincing enmity or bias toward the defendant or the state; but no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from other evidence, that the juror will render an impartial verdict according to the law and the evidence submitted to the jury at the trial.

(10) That the juror is related by consanguinity or affinity within the fifth degree to the person alleged to be injured or attempted to be injured by the offense charged, or to the person on whose complaint the prosecution was instituted; or to the defendant.

(11) That the juror is the person alleged to be injured or attempted to be injured by the offense charged, or the person on whose complaint the prosecution was instituted, or the defendant.

(12) That the juror is the employer or employee, or the spouse, parent, son, or daughter of the employer or employee, or the counselor, agent, or attorney, of any person included in division (C)(11) of this rule.

(13) That English is not the juror's native language, and the juror's knowledge of English is insufficient to permit the juror to understand the facts and the law in the case.

(14) That the juror is otherwise unsuitable for any other cause to serve as a juror.

**{¶45}** Neither R.C. 2313.17(B) nor Crim. R. 24(C) include prior service as a basis for challenging a juror for cause. Further, R.C. 2313.21, which sets forth the basis for discharging a juror, only provides for the discharge of a juror if "[a] person who is summoned as a juror * * * has actually served as a juror in any county of the state under Chapter 2313. of the Revised Code for two consecutive calendar weeks". R.C. 2313.21(A). There is no record demonstration any of the juror who had previously served had served for two consecutive calendar weeks.

**{¶46}** In addition, Appellant had the opportunity to remove up to four of the prospective jurors, using his preemptory challenges. Appellant chose not to do so. Appellant applied three of his preemptory challenges to prospective jurors who had not previously served, and waived his fourth challenge.

{¶47} We now turn to the Appellant's second claim the trial court erred in prohibiting from participating in jury selection and limiting voir dire.  It is well established that although a defendant has the right to counsel or the right to act pro se, a defendant does not have any right to "hybrid representation." *State v. Martin*, 1-103 Ohio St.ed 385, 2004-Ohio-5471, paragraph one of the syllabus; *State v. Thompson* (1987), 33 Ohio St. 3d 1, 6-7. The right to counsel and the right to act pro se "are independent of each other and may not be asserted simultaneously." *Martin* at paragraph one of the syllabus.

{¶48} Prior to the start of voir dire, Attorney Keyser advised the trial court Appellant wished to "take the lead" in his case and conduct voir dire himself.  The trial court, having no prior notice of Appellant's desire to proceed pro se, expressed concern over jury intimidation by Appellant.  The trial court ultimately ruled it would not permit Appellant to personally conduct the voir dire, but would allow Appellant to provide Attorney Keyser with the questions he wanted the prospective jurors to be asked.  Appellant did not provide Attorney Keyser with any questions during voir dire.  Appellant has failed to demonstrate he was prejudiced by not being permitted to personally conduct voir dire.

{¶49} We find the trial court did not err in prohibiting Appellant from conducting voir dire himself.

{¶50} Appellant's first assignment of error is overruled.

II

{¶51} In his second assignment of error, Appellant asserts prosecutorial misconduct.  Specifically, Appellant asserts the state withheld evidence and tampered with evidence.

**{¶52}** The test for prosecutorial misconduct is whether the conduct was improper and, if so, whether the rights of the accused were materially prejudiced." *State v. Smith*, 97 Ohio St. 3d 367, 2002-Ohio-6659, para. 45. "The 'conduct of a prosecuting attorney during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial'." *Id.* (Citations omitted). "Prosecutorial misconduct constitutes reversible error only in rare instances." *State v. Keenan* (1993), 66 Ohio St.3d 402, 405. "The touchstone of analysis * * * is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips* (1982), 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78. The Constitution does not guarantee an "error free, perfect trial * * *." *United States v. Hastings* (1983), 461 U.S. 499, 508, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96.

**{¶53}** Appellant claims the state improperly withheld the statement Jester gave to Detective Bushog on February 5, 2015.

**{¶54}** Det. Bushog testified he took a taped statement from Jester on February 5, 2015. Jester had not given police a statement prior to this date. Det. Bushog stated Jester did not say anything during his trial testimony which was materially different from his February 5, 2015 statement. Appellant did not cross-examine Det. Bushog about Jester's statement.

**{¶55}** During Appellant's cross-examination of Det. Bushog, Appellant asked the detective who wrote a certain report on the night of the incident. Det. Bushog responded he could provide an answer if he looked at the report. Appellant showed Det. Bushog a document which listed the officers who assisted at the crime scene on the night of the incident. Det. Bushog indicated he did not write the report, and could not tell who did as Appellant had only shown him a portion of the document. Appellant did not question Det.

Bushog about Jester's February 5, 2015 statement. Appellant also did not advise the trial court he did not receive the statement Jester gave Det. Bushog on February 5, 2015.

**{¶56}** Assuming, arguendo, the state failed to provide Appellant with Jester's February 5, 2015 statement, we find Appellant is unable to establish he was materially prejudiced by the prosecutor's failure to do so. There is nothing in the record to establish the statement was exculpatory. In fact, based upon Det. Bushog's testimony there were no material differences between Jester's trial testimony and his original statement, it appears the statement would have been inculpatory.

**{¶57}** Appellant further submits the state withheld exculpatory photographs of the crime scene.

**{¶58}** Appellant testified on his own behalf. During Appellant's testimony, Attorney Keyser showed him a photograph of the bathroom in Jester's residence. Appellant commented, "I just got this yesterday. This was not in my motion to discovery, I was entitled to every bit of it." Transcript of Trial, Vol. II at 315. The state objected, advising the trial court Appellant had been provided discovery months earlier. *Id.* Appellant responded, "And I didn't receive this." *Id.* The trial court admonished Attorney Keyser, "this kind of stuff can't go on. If there was a problem with discovery it should have been raised before trial. You know that's the case. So if you didn't give that to him, that's not the prosecutor's problem." *Id.*

**{¶59}** Appellant claims these photographs clearly suggest Jester's version of the events were false. However, Appellant has failed to demonstrate how these photographs would exculpate him or prove Jester's account was not credible. Appellant has not demonstrated prejudice.

{¶60} Within this assignment of error, Appellant also argues the state tampered with the recording of the telephone conversations he had with his mother while in the Richland County Jail. The state acknowledged it edited the recording of the telephone conversations to include only Appellant's incriminating statements. The trial court ruled the state had gone too far with its editing, and held the portions of the recording referring to the events of February 2, 2015, would either be played in their entirety or not played at all. The trial court found the remaining portions of the conversations were irrelevant; therefore, inadmissible. The state played the recording of the conversations. The trial court stopped the recording when the state played portions not relevant to the charges.

{¶61} Assuming, arguendo, the prosecutor's conduct of which Appellant complains was improper, we cannot find such conduct had any prejudicial impact on the trial itself.

{¶62} Appellant's second assignment of error is overruled.

III, IV

{¶63} We choose to address Appellant's third and fourth assignments of error together. In his third assignment of error, Appellant raises an insufficiency of the evidence claim. In his fourth assignment of error, Appellant raises a manifest weight of the evidence claim.

{¶64} The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks* (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus, in which the Ohio Supreme Court held, "[a]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the

average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Dowdle*, 5th Dist. Stark No. 2015CA00119, 2016-Ohio-485, para. 16.

**{¶65}** In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶66}** Appellant was convicted of one count of kidnapping, in violation of R.C. 2905.01(A)(2), which provides:

(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: *

* * (2) To facilitate the commission of any felony or flight thereafter.

**{¶67}** As set forth in the Statement of the Case and Facts, supra, Appellant used force to restrain Jester's liberty. Appellant admitted he tied Jester's hands behind his

back and ordered him into the bedroom.  Accordingly, the only element in dispute is whether Appellant's actions were done "[t]o facilitate the commission of a felony or flight thereafter."

**{¶68}** Jester testified Appellant tied him up with a bed sheet, ordered him to the ground, and then reached into his pockets.  This testimony, when viewed in the light most favorable to the state, supports a finding beyond a reasonable doubt Appellant restrained Jester's liberty to facilitate robbing him.  Jester also testified after Appellant struck him in the head with the butcher block and tied him up, Appellant ordered him to lay on the bed, face down. Appellant threatened to kill him, and then fled shortly thereafter. This testimony, when viewed in the light most favorable to the state, supports  a finding beyond a reasonable doubt Appellant restrained Jester's liberty to facilitate fleeing the scene after the assault.

**{¶69}** Appellant further contends because the jury acquitted him of the aggravated robbery charge, his conviction for kidnapping was based upon insufficient evidence and against the manifest weight of the evidence.  We disagree.

**{¶70}** "Consistency between verdicts on several counts of an indictment is unnecessary where the defendant is convicted on one or some counts and acquitted on others; the conviction generally will be upheld irrespective of its rational incompatibility with the acquittal." *State v. Trewartha*, 165 Ohio App.3d 91, 2005-Ohio-5697, citing *State v. Adams* (1978), 53 Ohio St.2d 223, vacated in part on other grounds in *Adams v. Ohio,* 439 U.S. 811, 99 S.Ct. 69, 58 L.Ed.2d 103.  Every count of a multiple-count indictment is considered to be distinct and independent of all the other counts; therefore, inconsistent verdicts on different counts do not justify overturning a verdict of guilt. *Id.* (Citations

omitted). As the Ohio Supreme Court has stated, "the sanctity of the jury verdict should be preserved and could not be upset by speculation or inquiry into such matters to resolve the inconsistency." *State v. Lovejoy* (1997), 79 Ohio St.3d 440, 444.

{¶71} Appellant was also convicted of felonious assault, in violation of R.C.2903.11(A)(1), which reads, "(A) No person shall knowingly * * * (1) Cause serious physical harm to another or to another's unborn."

{¶72} "Serious physical harm" is defined as "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment; * * * (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement". R.C. 2901.01(A)(5).

{¶73} Jester testified, as the result of the assault by Appellant, he received a six inch gash on the back of his head, and an injury to his ear which required seventeen staples to repair. Jester stated he has a permanent scar on the back of his head. Jester further testified he continues to seek treatment for the mental trauma caused by the assault. He also suffers physical effects such as lightheadedness and headaches.

{¶74} Appellant claims he acted in self-defense; therefore, his conviction for felonious assault should not stand. Pursuant to R.C. 2901.05(A), Appellant bore the burden of proving self-defense by a preponderance of the evidence. The only testimony in support of Appellant's claim of self-defense was his own self-serving testimony.

{¶75} The evidence presented by the state included not only physical evidence, such as the blood on the recliner, the knife recovered from the table next to the recliner, the butcher block, and the blood stained bed pillow, but also Jester's testimony and the testimony of law enforcement officers.

{¶76} The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig* (March 23, 2000), Franklin App. No. 99AP-739 (Citation omitted). Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, Franklin App. No. 02AP-604, 2003-Ohio-958, at para. 21 (Citation omitted).

{¶77} The jury obviously chose to believe Jester's account of the assault.

{¶78} We find Appellant's convictions were neither based upon insufficient evidence nor against the weight of the evidence.

{¶79} Appellant's third and fourth assignments of error are overruled.

V.

{¶80} In his final assignment of error, Appellant maintains his conviction is unconstitutional because he was denied his right to call forth witnesses in favor of his defense. Specifically, Appellant claims the trial court failed to issue subpoenas for witnesses as requested. Appellant asserts these witnesses could have enabled him to disprove Jester's claims.

{¶81} A review of the record reveals Appellant filed precipes for subpoenas for Jeff Partin, Renee Tucker, and Angela Riley. The trial court issued the subpoenas, the witnesses were served and appeared at trial. There is no record demonstration Appellant filed precipes for subpoenas which the trial court did not issue. In his brief to this Court, Appellant references a portion of the trial transcript which reveals Appellant's frustration

with the state for not calling certain witnesses.  There is no obligation upon the state to call every potential witness.  Appellant was not prevented from calling any witnesses.

    **{¶82}**  Appellant's fifth assignment of error is overruled.

    **{¶83}**  The judgment of the Richland County Court of Common Pleas is affirmed.


By: Hoffman, J.

Gwin, P.J.  and

Baldwin, J. concur