**MYERS, Appellee,**

v.

**ENCOMPASS INDEMNITY COMPANY, Appellant.**

[Cite as *Myers v. Encompass Indemn. Co.,* 169 Ohio App.3d 545, 2006-Ohio-6076.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA2006–02–033.

Decided Nov. 20, 2006.

Poston, Seifried & Schloemer and Kent W. Seifried;  and Edward J. McTigue, for appellee.

Benjamin, Yocum & Heather, L.L.C., and Christopher J. Mulvaney, for appellant.

---

Bressler, Judge.

{¶ 1} Defendant-appellant, Encompass Indemnity Company ("Encompass"), appeals the decision of the Butler County Court of Common Pleas to grant summary judgment on an insurance-coverage issue to plaintiff-appellee, Robert Douglas Myers.  We reverse the judgment and remand the cause for the reasons outlined below.

{¶ 2} Appellee incurred damage at his home when water entered his basement after a series of events occurred both off and on his property on April 22, 2004.  The parties stipulated in writing that rain fell, "diffused over the surface of the ground" on the properties of appellee and his neighbors, and entered a catch basin and drain pipe on the property of appellee's adjoining neighbor.  The flow of water into the drain pipe was hampered by debris, an intersecting pipe that reduced flow in the pipe, and an outlet pipe smaller than the intake pipe, which created pressure in the system.

{¶ 3} Water gushed back up from the drain pipe into the catch basin, overflowed, and "followed the terrain of appellee's property" to the outside stairwell of his basement.  Appellee's stairwell drain backed up from the volume of water.  The sliding glass doors to appellee's basement collapsed under the pressure of the pooling water, allowing water to enter the basement, causing the loss.

{¶ 4} Appellee sought payment for his losses from the home-protection portion of his "USP–Elite" insurance policy with Encompass.  Encompass denied the claim.  Appellee filed a complaint in the trial court, alleging that Encompass had breached the contract and acted in bad faith in denying his insurance claim.  Both parties filed motions for summary judgment on the breach-of-contract issue.  The trial court granted appellee's motion and denied the motion from Encompass.  The trial court's entry indicated that there was no just cause for delay.  Encompass appealed, presenting the following assignment of error:

{¶ 5} "The trial court erred to the prejudice of defendant-appellant, Encompass Indemnity Company, by granting summary judgment in favor of plaintiff-appellee, Douglas Myers."

{¶ 6} We review summary judgment decisions de novo, which means that we use the same standard that the trial court should have used and review the trial

court's decision independently and without deference to it. *Todd Dev. Co., Inc. v. Morgan*, Warren App. No. CA2005–11–124, 2006-Ohio-4825, 2006 WL 2663002, ¶ 31; *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241; Civ.R. 56(C).

{¶ 7} "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201.

{¶ 8} It is well settled that an insurance policy is a contract and the relationship between the insured and the insurer is purely contractual in nature. *Nationwide Mut. Ins. Co. v. Marsh* (1984), 15 Ohio St.3d 107, 109, 15 OBR 261, 472 N.E.2d 1061.

{¶ 9} When addressing the issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement. *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.* (1999), 86 Ohio St.3d 270, 273, 714 N.E.2d 898. Courts will presume that the intent of the parties is reflected in the language used in the policy, *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus, and look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from within the policy. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11.

{¶ 10} Appellee asked for summary judgment, arguing that the policy was an all-risk policy that covered perils unless specifically excluded. Appellee argued that no exclusion in the policy applied to these facts, and his losses were covered.[1] Appellee further argued that the portion of the policy that provided additional coverage at a limit of $15,000 for loss caused by water that backs up through sewers or drains was not applicable to his direct losses because he purchased the additional coverage for sewer or drain backup to cover nondirect, nonphysical losses that were not otherwise included within the direct-losses part of the contract.

{¶ 11} Encompass asked for summary judgment, arguing that the policy contained language that excluded losses from "water, meaning flood, surface water." Encompass also argued that another provision that excludes losses caused from faulty, inadequate, or defective design, construction, or maintenance "of part of all of any property whether on or off your residence premises" was

---

1. The limit for appellee's home protection policy is $1,547,000.

applicable to preclude recovery. The drainage system on the adjoining property was alleged to be the faulty design, construction, or maintenance.

{¶ 12} In the alternative, Encompass argued that summary judgment should be granted on its motion because the losses were covered only under an additional coverage provision for losses from water from sewer or drain backups with a $15,000 coverage limit.

{¶ 13} In its decision, the trial court indicated that the policy contained a $15,000 cap for loss caused by water that backs up through sewers or drains. However, the trial court focused on the fact that appellee purchased additional insurance, which was listed as "Optional Excess Liability Coverage Endorsement–Ohio."

{¶ 14} The optional excess endorsement involved an additional premium and carried a $1 million limit. The trial court ruled that the wording of the insurance contract did not provide for the "contingency presented by the facts of this case and therefore, it is ambiguous." The trial court further ruled that a reasonable construction is that the parties intended that the $1 million for the optional excess protection policy limit "would be contributed toward a loss resulting from a single occurrence for which the insured suffered." As we previously noted, the trial court subsequently granted appellee's motion for summary judgment and denied the motion of Encompass.

{¶ 15} A reading of the appellate briefs of the parties reveals that neither party adopts the trial court's determination that the $1 million limit of the "Optional Excess Liability Coverage Endorsement" is available for this loss.

{¶ 16} The insuring agreement for the excess liability coverage endorsement states: "We will pay damages for which a covered person becomes legally liable due to an occurrence resulting in personal injury, bodily injury or property damage, up to the limit of liability shown in the Coverage Summary for 'Optional Excess Liability.'" The excess liability coverage is a liability policy not applicable to these facts and will not be considered further in this case.

{¶ 17} The issues before this court are whether we can rule, as a matter of law, that no coverage is provided for this loss under the Encompass policy, or that the policy limit of $1,547,000 is available for the loss because no exclusion applies, or that the $15,000 limit on the loss from water from a backed-up sewer or drain is applicable in some manner.

{¶ 18} We note that the assignment of error set forth by Encompass asks this court to reverse the trial court's grant of summary judgment to appellee for the stated reasons therein. Therefore, our review will be limited to appellee's motion for summary judgment. After reviewing the cases cited by the parties, additional case law, the insurance policy at issue, and the arguments of the parties, and

after employing the applicable standard of review, we find that appellee is not entitled to summary judgment for the reasons discussed below.

{¶ 19} No party disputes that appellee's loss was caused by water entering the basement.[2] Loss from water is a listed exclusion in the insurance policy. Under the section titled, "Losses We Do Not Cover," the policy states: "We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss." The specific provision states that the policy does not cover loss "[c]aused by water damage, meaning: (1) Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by the wind; (2) Water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure." Surface water is not defined in the policy.

{¶ 20} The Ohio Supreme Court noted in *Crawford v. Rambo* (1886), 44 Ohio St. 279, 282, 7 N.E. 429, that "[s]urface water is that which is diffused over the surface of the ground, derived from falling rains and melting snows, and continues to be such until it reaches some well-defined channel in which it is accustomed to and does flow with other waters, whether derived from the surface or springs, and it then becomes the running water of a stream, and ceases to be surface water."

{¶ 21} While noting that surface waters cease to be such when they empty into and become part of a natural stream or lake, a Nebraska Court of Appeals held that a surface-water exclusion was not applicable because the water at issue in the case ceased to exist as surface water or runoff once it was channeled through an underground pipe that drained water from the roof of a neighbor's building. *Georgetowne Square v. United States Fid. & Guar. Co.* (1994), 3 Neb.App. 49, 523 N.W.2d 380; see *Heller v. Fire Ins. Exchange* (Colo.1990), 800 P.2d 1006 (water from snow runoff diverted onto plaintiff's property by man-made ditches did not fall under surface-water exclusion of policy); see, also, *Front Row Theatre, Inc. v. Am. Manufacturer's Mut. Ins. Cos.* (C.A.6, 1994), 18 F.3d 1343 (distinction made between surface water that backed up through drain and surface water that never backed up because drain blockage prevented it; however, court found that language of policy that specifically barred coverage where flooding was a contributory cause governed and precluded payment).

---

2. We decline to accept the invitation to discuss at length the policy exclusion for faulty, inadequate, or defective design, workmanship, or maintenance of the drain because that portion of the policy indicates that ensuing losses not excluded are covered, which brings the discussion back to the consideration of whether the loss caused by water was excluded under the water-exclusion portion of the policy.

{¶ 22} Appellee appears to concede that the rain water dispersing on the ground was surface water, but argues that it lost its character as surface water once it entered a well-defined channel, i.e., the drain basin and drain pipe.

{¶ 23} A Georgia appeals court reviewed a case involving similar policy language for losses from water damage. This case included a fact scenario in which rainwater reportedly flowed from an adjacent grate, across a surface area, and into a basement. See *Hirschfield v. Continental Cas. Co.* (1991), 199 Ga.App. 654, 405 S.E.2d 737. The *Hirschfield* court found that the question of whether rainwater was diverted from a storm drain to the surface by an underground blockage or whether it accumulated near the grate when the drain was otherwise blocked had no bearing on its ultimate determination. Id. The court found that under these facts, the water entering the basement fits squarely within the "surface water" exclusion in the policy. Id.

{¶ 24} The First District Court of Appeals in *Reith v. McGill Smith Punshon*, 163 Ohio App.3d 709, 2005-Ohio-4852, 840 N.E.2d 226, dealt with a case in which a homeowner sued a subdivision developer for negligence and trespass in connection with the flooding of his home and driveway over a 10-year period. Runoff from the subdivision across the road was collected in a catch basin and carried onto the plaintiff's property by an underground pipe. This case was decided on a statute of limitations, but the appeals court found that the water involved was surface water.

{¶ 25} The appeals court rejected the plaintiff's argument that once the surface water entered a pipe underground, it became sewer water. "[W]e are not persuaded that there is a legal distinction between surface water that is above the ground and surface water that is temporarily channeled through underground pipes." *Reith* at ¶ 30. The undisputed facts indicate that "all the flooding was caused by the same surface-water runoff." Id. at ¶ 33; see, also, *Emminger v. Bergman* (Dec. 29, 1982), Montgomery App. No. 7772, 1982 WL 3901 (water from rain and snow that was carried to defendant's property through 24-inch pipe and ultimately diverted to neighboring properties was surface water).

{¶ 26} We are persuaded by the Ohio cases of *Emminger* and *Reith* that the water in this case was surface water, which backed up from a drain, and flowed onto appellee's property. Under the main provisions of this insurance policy, the loss caused by surface water is excluded.

{¶ 27} However, as we previously mentioned, the policy in the instant case contains a provision, under the heading of "Additional Property Coverages," which covers losses from water "which backs up through sewers or drains."

{¶ 28} A review of the policy language found in the amendment to the "Back-up of Sewer or Drain Coverage" indicates: "Unless a different limit of liability is

stated on the Coverage Summary for Back-up of Sewer or Drain Coverage, our maximum limit of liability for this coverage is $15,000." There is no limit of liability for back-up of sewer listed in the Coverage Summary, therefore, it appears that the $15,000 limit applies.[3]

{¶ 29} The Encompass policy excludes losses from water, but adds a coverage inclusion, albeit with a $15,000 limit, for losses from water backed up through a drain or sewer. This additional coverage in the policy was amended to add the $15,000 limit. It is important to note that this same amendment also deleted policy language that would preclude coverage where another exclusion, such as surface water, already existed in the policy. See, e.g., *Hirschfield v. Continental Cas. Co.*, 405 S.E.2d at 738-739 (additional property coverage portion of insurance policy states that insurer covers loss caused by water that backs up through sewers or drains except for losses in the section called "Property Losses We Do Not Cover").

{¶ 30} Accordingly, the $15,000 limit for loss from water that backs up through sewers or drains is available to cover the loss incurred by appellee. This appears to be the only portion of the policy that permits recovery for appellee under the facts of this case.

{¶ 31} We find that summary judgment for appellee was not appropriate. The trial court's grant of summary judgment to appellee is reversed, and this matter is remanded to the trial court for proceedings consistent with the law and this court's opinion.

{¶ 32} The judgment is reversed and the cause remanded.

Judgment accordingly.

WALSH, P.J., and YOUNG, J., concur.

---

3. We find no indication in the record that this additional coverage cannot be used for appellee's direct losses.