[Cite as *Helfrich v. Foor Family Invests., L.L.C.*, 2022-Ohio-3446.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| JAMES HELFRICH, | : | JUDGES: |
| | : | Hon. Earle E. Wise, P.J. |
| Plaintiff - Appellant | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| FOOR FAMILY INVESTMENTS, | : | Case No. 2021 CA 00070 |
| LLC, *et al.* | : | |
| | : | |
| Defendants - Appellees | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Licking County
Court of Common Pleas, Case No.
2018 CV 00245


JUDGMENT:     Affirmed


DATE OF JUDGMENT:     September 29, 2022


APPEARANCES:

For Plaintiff-Appellant

JAMES HELFRICH, Pro Se
P.O. Box 921
Pataskala, Ohio 43062

For Plaintiff-Appellant for Counterclaimee

TODD M. ZIMMERMAN
STEPHEN E. HOUSE
Rohrbachers Cron Manahan Trimble &
Zimmerman Co., LPA
460 Polaris Parkway, Suite 175
Westerville, Ohio 43082

For Defendants-Appellees Foor
Family Investments

JOHN C. ALBERT
Crabbe Brown & James, LLP
500 South Front Street, Suite 1200
Columbus, Ohio 43215

For Defendants-Appellees B. Carr
Farms, LLC

JOSHUA R. BILLS
Pelini Campbell & Ricard, LLC
5880 Innovation Drive, Suite 150
Dublin, Ohio 43016

*Baldwin, J.*

{¶1}   Appellant, James Helfrich, appeals the decision of the Licking County Court of Common Pleas directing a verdict in favor of Appellee, Foor Family Investments, LLC, (Foor) as well as the trial court's denial of his motion for a directed verdict regarding a counterclaim. He is also appealing the jury's verdict in favor of Appellee and several interlocutory rulings of the trial court.

## STATEMENT OF FACTS AND THE CASE

{¶2}   Helfrich and Foor own parcels of property that abut each other and upon which farms have existed for several years. Foor installed a systemic tile network on its farm to address drainage and connected it to a ten inch diameter tile that ran across Helfrich's property and emptied into a pond. This new tile system replaced drainage tiles that had been in existence and operating for over fifty years at the time of the installation. The ten inch tile was present in Helfrich's property and had served as an outlet for the known life of the system until September 2017 when that tile no longer accepted the drainage from the Foor property. Foor installed a standpipe at the border with Helfrich's property and water flowed up and out of that pipe on to the ground. The flow from that standpipe spread over Foor's and Helfrich's property, causing Helfrich to pursue legal remedies and ultimately leading to this appeal.

{¶3}   Helfrich planned to purchase the farm at Hollow Road in 2015 when he discovered holes in the farm field that he attributed to the drain tile that ran from the Foor property through the property he planned to purchase and emptied into a pond. He contacted Foor about repair of the tile in a letter dated July 6, 2015:

I have or will be purchasing the property at 10012 Hollow Road, Pataskala, Ohio, which was formerly owned by Richard and Melinda Smith. You, Foor Family Investments, currently own the property to the east. There is field tile that runs from your property across the property at 10012 Hollow Road. Most, if not all, is plugged or has blown through causing liability and hazards to the property at 10012 Hollow Road. Please let me know if you will pay the cost of the field tile repair or replacements for the tiles that will and have benefited your property, and/or if you will cost share the field tile replacement that will benefit both of our properties -- both your property and mine. Simply stated, I'm not going to spend my money to repair or maintain the field tile that comes from your property or benefits your property. Please let me know in the next few weeks if you will pay for or repair the field tile. Otherwise, I will assume that you, Foor Family Investments, have abandoned the drain tile.

Trial Transcript, p. 175, lines 1-21.

**{¶4}** Ronald Foor responded to the letter and asked that Helfrich contact him after the crops had been harvested from the field surrounding the defects in the tile and there is no evidence that Helfrich objected to the delay. Helfrich did not contact any representative of Foor and neither Ronald Foor or any representative from Foor contacted Helfrich. The record is not clear on this issue, but it appears that Foor assumed, due to lack of complaint by Helfrich, that Helfrich had made repairs.

**{¶5}** Bob Carr, principal of appellee B.Carr Farms, LLC (Carr), worked for Foor and was investigating repairs of the tile drainage system on the Foor farm. After

discussing the matter with Foor, plans were made to update the fifty year old tile drainage network with a new, systemic network using corrugated plastic pipe in place of clay pipe. The goal was the more efficient draining of the property, decreasing erosion and contamination, and reducing the burden on the drainage system while still effectively draining the property.

{¶6}    The new plan did not alter the direction or flow of the water from the Foor farm. Though new corrugated pipe was installed and new drainage network was comprised of a greater amount of pipe, the amount of water that would pass through the system remained the same. The water would move slower as a result of the corrugations in the pipe, thus reducing the burden on the drain tile that passed through Helfrich's property. Further, the new system directed the water to a ten inch drain in the same location on the Foor property that connected with the ten inch drain on the Helfrich property. This ten inch line had existed for over fifty years and had been maintained by Foor and its predecessors in title by making repairs on its farm as well as on the farm currently owned by Helfrich. The identity of the person who installed the ten inch line across the Helfrich property, when the line was installed and whether there was a pre-installation agreement is unknown.

{¶7}    Foor offered to install a new ten inch drain tile on the Helfrich farm, but Helfrich refused to allow the installation, characterizing the request as seeking an easement across his property. Foor did not agree that he was seeking an easement, but only asking to replace the older line.

{¶8}    Foor proceeded with the design and installation of the new tile system on its property, retaining Vince Chrisman for the design and appellee B.Carr Farms, LLC

(Carr) for the installation. Chrisman, an expert in the field of agricultural drainage with several years of experience, created a blue print for the installation of the new drainage system that included more tile than had been installed in the old system, but was designed to connect to the same ten inch tile that was used by the old system. Chrisman explained that his design, including the connection to the ten inch line, followed the natural contour and flow of water on the land. He explained that the water would follow this path and flow onto Helfrich's property if the drainage system was not available. He also stated that the drainage system that Foor installed would benefit Helfrich as it decreased the speed of the flow of the water and the burden on Helfrich's drainage, would reduce the amount of erosion and help prevent contamination. Chrisman's comments were contingent upon the drain running through Helfrich's property continuing to accept water.

{¶9}     Stasel Osborn, an employee of Carr, was working on the installation of the tile system on the Foor property. He exposed the ten inch drain tile on the Foor farm, near the boundary between the Foor and Helfrich properties and confirmed that water was freely flowing sometime before September 25, 2017. On that day, as he was driving by the two properties, he noticed Helfrich working with a small backhoe near the area where the ten inch tile passed from the Foor property to the Helfrich property. He turned around and drove out into the field on the Foor side of the boundary and watched as Helfrich continued to excavate and fill in a location that Osborn was convinced was directly over the location of the ten inch drain. Osborn was further convinced that Helfrich was blocking the drain, based upon the location of his excavation and the fact that water was no longer flowing through the ten inch drain, but was welling up from the exposed tile and flowing over the property.

**{¶10}** While Helfrich denied taking steps with the intent of blocking the ten inch drain, he did admit that he filled holes he had asked Foor to repair and that he "* * * dug the dirt away, and anything I could find at the beginning, I threw down there. When they asked what I put in there, I said, "I don't care what it was. I filled the hole with shoes, with rocks, license plates, anything. It didn't matter to me what I put down there." (Trial Transcript, p. 162, lines 9-14). He explained that he took this step to protect his family, friends and livestock from the hazards of the holes in the field. He also admitted that he could have repaired the defect in the tile that caused the hole or called Ron Foor and ask that he make repairs, but he chose to do neither. (Transcript, p. 255, line 24 to p. 256, line 25).

**{¶11}** The parties exchanged multiple emails regarding the flow of water in which Helfrich threatened litigation regarding the flow of water onto his property, but never reached an agreement. Helfrich filed a complaint against Carr and Foor regarding "excessive and harmful drainage of subsurface water across property owned by the Plaintiff, James Helfrich." (Complaint, March 5, 2018, p. 1). Helfrich references nine causes of action in his complaint, all of which are related to the flow of water from the Foor property to the Helfrich property. Foor filed an answer and a counterclaim for damages seeking the establishment of an easement. The case proceeded toward trial and, in April 2019, Helfrich's insurance company retained counsel to represent him on the counterclaim only. Foor and Carr moved for summary judgment and both motions were denied.

**{¶12}** Trial was scheduled to begin on March 9, 2020, but was continued on the request of Foor. Helfrich appeared that morning and filed a notice of dismissal of all claims

against Carr, causing Foor to seek leave to file a third-party action against Carr to retain it as a party to the case. The case was continued, the third-party complaint was filed and Carr responded.

{¶13}  At that time, Helfrich's defense counsel asked to re-open discovery and the trial court denied that request.

{¶14}  After additional continuances, the trial commenced on August 30, 2021. Helfrich represented himself regarding his claims, but was represented by counsel with regard to the counterclaim filed by Foor. At the completion of his case, Foor's motion for directed verdict regarding Helfrich's claim was granted. The matter proceeded to trial on the counterclaim of Foor and Helfrich's counsel moved for a directed verdict at the conclusion of the case. The trial court denied the motion, the jury returned a verdict in Foor's favor awarding $30,000.00 in damages and finding that an easement by estoppel did exist.

{¶15}  Helfrich filed a timely appeal and submitted ten assignments of error:

{¶16}  "I. THE TRIAL COURT ERRED BY NOT PERMITTING REBUTTAL AND IMPEACHMENT WITNESSES."

{¶17}  "II. THE TRIAL COURT ERRED BY DENYING COUNSEL DEFENDING THE COUNTERCLAIM VOIR DIRE, PEREMPTORY CHALLENGES, AND A FULL OPENING STATEMENT."

{¶18}  "III. THE TRIAL COURT ERRED WHEN IT DID NOT ALLOW THE JURY TO BE INFORMED OF THE LAW AND BURDENS OF PROOF UNTIL AFTER THE TRIAL."

**{¶19}** "IV. THE TRIAL COURT ERRED WHEN IT DISMISSED HELFRICH'S COMPLAINT ON A MOTION FOR DIRECTED VERDICT WHEN THERE WAS AMPLE EVIDENCE OF DAMAGES FOR THE JURY."

**{¶20}** "V. THE TRIAL COURT ERRED BY INJECTING ITS ARGUMENTS INTO THE CASE AND THEN PRONOUNCE THOSE ARGUMENTS TO BE FACT SUFFICIENT TO GRANT DIRECTED VERDICT ON PLAINTIFFS CLAIMS."

**{¶21}** "VI. THE TRIAL COURT ERRED WHEN IT DENIED HELFRICH'S COUNTERCLAIM COUNSEL A MOTION FOR DIRECTED VERDICT WHEN THERE WAS NO CLEAR AND CONVINCING EVIDENCE TO SUPPORT AN EASEMENT BY ESTOPPEL OR BY IRREVOCABLE LICENSE."

**{¶22}** "VII. THE RECORD DID NOT HAVE CLEAR AND CONVINCING EVIDENCE FOR THE JURY TO CONCLUDE AN EASEMENT BY ESTOPPEL OR BY IRREVOCABLE LICENSE."

**{¶23}** "VIII. DID THE JURY BECOME INFLUENCED BY PASSION OR AWARD EXCESSIVE DAMAGES NOT SUPPORTED IN THE RECORD?"

**{¶24}** "IX. THE TRIAL COURT ERRED WHEN IT ALLOWED A MISDEMEANOR CRIMINAL CONVICTION TO BE INTRODUCED AT TRIAL."

**{¶25}** "X. THE TRIAL COURT ERRED WHEN IT WOULD NOT REOPEN DISCOVERY FOR HELFRICH'S COUNSEL."

**ANALYSIS**

**I.**

**{¶26}** In his first assignment of error, Helfrich complains that the trial court erred by not permitting rebuttal and impeachment witnesses.

**{¶27}** Helfrich argues that the trial court prevented his use of rebuttal or impeachment witnesses and cites to *Phung v. Waste Mgt., Inc.,* 71 Ohio St.3d 408, 644 N.E.2d 286, (1994) in support of his contention that he had an unconditional right to present rebuttal testimony. Helfrich omits a significant portion of the quote in *Phung* which states; "A party has an unconditional right to present rebuttal testimony on matters which are first addressed in an opponent's case-in-chief and should not be brought in the rebutting party's case-in-chief. *See Katz v. Enzer* (1985), 29 Ohio App.3d 118, 29 OBR 133, 504 N.E.2d 427." *Id.* at 410. Helfrich's case was dismissed by directed verdict, so Foor was not obligated to present a case-in-chief responding to Helfrich's claim and, therefore, rebuttal witnesses and evidence were moot.

**{¶28}** Likewise, impeachment is generally a process used to attack the credibility of an opponent's witness. (Evid. R. 607). While under certain circumstances a party may impeach his own witnesses, Helfrich does not state that he intended to impeach his own witnesses. The trial court asked if he rested and he conceded that he had, subject to the presentation of rebuttal or impeachment witnesses. The trial court properly informed him that those witnesses would not be permitted until after the defense rested and, because Helfrich's claim was dismissed on directed verdict, impeachment evidence was unnecessary.

**{¶29}** Helfrich's first assignment of error is overruled.

**II.**

**{¶30}** Helfrich argues in his second assignment of error that the trial court erred by denying counsel defending the counterclaim voir dire, peremptory challenges and a full opening statement.

**VOIR DIRE**

**{¶31}** Because the scope of voir dire lies within the sound discretion of the trial court, we review the trial court's action for an abuse of discretion. *State v. Jackson,* 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173, ¶ 28. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶32}** Civil Rule 47(A) provides broad discretion for the trial court's conduct of examining the jurors:

> The court may permit the parties or their attorneys to conduct the examination of the prospective jurors or may itself conduct the examination. In the latter event, the court shall permit the parties or their attorneys to supplement the examination by further inquiry. Nothing in this rule shall limit the court's discretion to allow the examination of all prospective jurors in the array or, in the alternative, to permit individual examination of each prospective juror seated on a panel, prior to any challenges for cause or peremptory challenges.

**{¶33}** Helfrich chose to represent himself in this matter and had counsel for the counterclaim by virtue of an insurance policy creating a hybrid representation that is not looked upon with favor. *State v. Martin*, 103 Ohio St.3d 385, 2004–Ohio–5471, paragraph one of the syllabus; State v. Thompson, 33 Ohio St.3d 1, 6, 514 N.E.2d 407, (1987). The trial court resolved this dilemma by restricting voir dire to one representative of the plaintiff, with the choice left to Helfrich. Helfrich chose to conduct voir dire, had the

opportunity to consult with his defense counsel and has failed to demonstrate he was prejudiced by the trial court's actions. *State v. McCabe,* 5th Dist. Richland No. 15CA73, 2016-Ohio-5892, ¶ 48.

**{¶34}** We find that the trial court did not abuse its discretion by limiting voir dire to one representative of the Appellant.

## PEREMPTORY CHALLENGES

**{¶35}** Helfrich next contends that the trial court erred by not granting he and his defense counsel peremptory challenges which would have resulted in the plaintiff having six challenges in violation of Civ. R. 47(C). Pursuant to that Rule, each party "may peremptorily may challenge three prospective jurors." In this matter, the parties are James Helfrich, Foor Family Investments, LLC and Carr Farms, LLC. The fact that the parties are subject to claims and counterclaims has no impact on their status as a party and therefor does not entitle them to additional peremptory challenge. *Brown v. Martin*, 5th Dist. Fairfield No. 14-CA-31, 2015-Ohio-503, ¶ 14.

**{¶36}** We find that the trial court did not err by providing Helfrich three peremptory challenges.

## OPENING STATEMENT

**{¶37}** A trial court's ruling with respect to opening and closing statements will not be reversed on appeal absent an abuse of discretion. *Burton v. Dutiel,* 5th Dist. No. 14-CA-00024, 2015-Ohio-4134, 43 N.E.3d 874, ¶ 48 quoting *Pang v. Minch,* 53 Ohio St.3d 186, 559 N.E.2d 1313 (1990).

**{¶38}** Helfrich's defense counsel did request the opportunity to present a limited opening statement and he and the trial court discussed the matter out of the presence of the jury:

MR. ZIMMERMAN: Your Honor, I believe I have a right as defending a claim to be able to show or state that the evidence -- what the allegations against Mr. Helfrich are and what the evidence will show with regards to those allegations.

THE COURT: What evidence are you going to present?

MR. ZIMMERMAN: The testimony of Jim Helfrich and other witnesses testifying for the Foor Family Farm and Mr. Carr, possibly.

THE COURT: All right. Be very quick about it.

MR. ZIMMERMAN: Okay.

THE COURT: Okay. It's not fair to give Mr. Helfrich two opening statements when everybody else doesn't get two. They just get one. And that's what we are doing here.

MR. ZIMMERMAN: I understand that, your Honor.

THE COURT: Okay. That's all. So just don't take advantage of it.

MR. ZIMMERMAN: Okay. I just think that they're separate and distinct.

THE COURT: They are separate things, but it's one party, one party. So every party gets their opening statement instead of two, except in your case. So we'll make that exception for you.

Transcript, p. 109, line 13 to p. 110, line 15

**{¶39}** And Zimmerman was given the opportunity to make an opening statement. At one point opposing counsel objected when Zimmerman began discussing the applicable law. The trial court instructed him to adhere to the facts in his opening statement, but did not sustain the objections. (Transcript, p. 124).

**{¶40}** Helfrich complains about these exchanges between the attorney and the court, but does not describe any prejudice as a result and we fail to find any in the record. We also do not find that the trial court abused its discretion with regard to the opening statements.

**{¶41}** Helfrich's second assignment of error is overruled.

**III.**

**{¶42}** In his third assignment of error Helfrich contends the trial court erred when it did not allow the jury to be informed of the law and burdens of proof until after the trial. This assignment is directed toward the trial court's response to Appellee's objection to Helfrich's defense counsel's opening statement. Appellant complained that defense counsel was discussing the applicable law during opening statement and the trial court agreed. The trial court directed counsel to limit his comments to the facts.

**{¶43}** Helfrich's argument is summarized on page 14 of his brief in the sentence: "For the jury to sit through four days of Water Law and not know what they should be looking for in the testimony until the Judge reads them the instructions resulted in the jury having to guess and try to remember what they had listened to for four days." As noted above, the standard of review with regard to the trial court's control opening statements is abuse of discretion.

**{¶44}** The trial court described opening statements as "a preview of the claims of each party designed to help you follow the evidence as it is presented." (Transcript p. 106, lines 1-2). They are "designed to set forth what the evidence will show" or "to foreshadow what the evidence is and what he believes the evidence will establish." *State v. Terrance Lamar Blackmon*, 5th Dist. Stark No. 95CA00311, 1996 WL 488821, *2; *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 47. The trial court did not abuse its discretion by directing counsel to adhere to describing what he expected the facts to be and he complied with that direction without objection.

**{¶45}** Helfrich's third assignment of error is overruled.

### IV., V.

**{¶46}** In his fourth assignment of error, Helfrich contends the trial court erred by granting a directed verdict and dismissing his claim. He offers support for this assignment by referring to locations in the record that he claims support an award of damages, concluding that the only reason for the dismissal of the claim was lack of damages. In his fifth assignment, he contends that the trial court erred by "injecting its arguments into the case and then pronounce those arguments to be fact sufficient to grant Directed Verdict on Plaintiffs claims."

**{¶47}** "In reviewing a directed verdict motion, the evidence must be construed most strongly in favor of the nonmovant. Civ.R. 50(A)(4). Directed verdict is improper **589 if reasonable minds could come to different conclusions on any determinative issue. *Id.* The court merely considers the law and the sufficiency of the evidence; the court does not weigh the evidence or consider witness credibility. *Wagner v. Roche Laboratories*

(1996), 77 Ohio St.3d 116, 119, 671 N.E.2d 252, 255–256." *Audia v. Rossi Bros. Funeral Home*, 140 Ohio App.3d 589, 591, 748 N.E.2d 587, 588–89 (2000).

**{¶48}** Our standard of review for the grant or denial of a motion for a directed verdict is whether there is probative evidence which, if believed, would permit reasonable minds to come to different conclusions as to the essential elements of *278 the case, construing the evidence most strongly in favor of the nonmovant. *Sanek v. Duracote Corp.*, 43 Ohio St.3d 169, 539 N.E.2d 1114 (1989). A motion for a directed verdict therefore presents a question of law, and an appellate court conducts a de novo review of the lower court's judgment. *Shadle v. Morris*, 5th Dist. Stark No. 2012CA00073, 2013-Ohio-906, 2013 WL 987883.

**{¶49}** We must first address Helfrich's incorrect description of surface water. Helfrich contends that while he must accept the natural drainage of surface water from surrounding properties, once the water leaches into the soil it is no longer surface water and his obligation to accept the passage of those waters on his land ends. He cites to no precedent to support his contention, but states it as a binding principal. We must reject this characterization of surface water.

**{¶50}** Rain that percolates into the ground is no longer on the surface, but it remains surface water until it reaches a recognized channel of flowing water. "Surface water" is defined as:

> [water that] is diffused over the surface of the ground, derived from falling rains and melting snows, and continues to be such until it reaches some well-defined channel in which it is accustomed to, and does flow with other waters, whether derived from the surface or springs; and it then becomes

the running water of a stream, and ceases to be surface water. *Reith v. McGill Smith Punshon, Inc.,* 163 Ohio App.3d 709, 2005-Ohio-4852, 840 N.E.2d 226, ¶ 25 (1st Dist.), quoting *Crawford v. Rambo*, 44 Ohio St. 279, 282, 7 N.E. 429 (1886). Surface water does not cease to be so merely because it percolates into the ground and is carried by underground conduits*. See Reith* at ¶ 24*. See also Myers v. Encompass Indemn. Co*., 169 Ohio App.3d 545, 2006-Ohio-6076, 863 N.E.2d 1083, ¶¶ 25-26 (12th Dist.) (for purposes of applying an insurance exclusion, rain water that flowed into a drain that backed up and dispersed onto the claimant's property retained its character as surface water); *Mays v. Moran,* 4th Dist. Ross Nos. 97CA2385, 97CA2386, 1999 WL 181400, *5–6 (Ohio App.) (accumulating rainfall retained *866 its characterization as surface water as it flowed across property over a dike until it reached its defined watercourse); *Emminger v. Bergman,* 2d Dist. Montgomery No. CA 7772, 1982 WL 3901, *3–4 (Ohio App.) (rain water that fell upon the ground, collected into a drainage pipe, and flowed into property on the other side of a road retained the character of surface water).

*Bonkoski v. Lorain Cnty.,* 9th Dist. No. 17CA011094, 2018-Ohio-2540, 115 N.E.3d 859, ¶ 15.

{¶51} For purposes of this case, the rain water that is transported by the Foor drain tiles remains surface water as it travels through the ground, in the tile and into Helfrich's property. Helfrich's contention that it was no longer surface water is

unsupported by authority and contradicts current precedent and, therefore, we reject this argument.

{¶52} The parties agree that the foundation of Helfrich's claim is the characterization of the impact of Foor's installation of drain tile on the water that flows from the Foor property to the Helfrich property. The Supreme Court of Ohio provided the test for this situation in *McGlashan v. Spade Rockledge Terrace Condo Dev. Corp.,* 62 Ohio St.2d 55, 60, 402 N.E.2d 1196 (1980):

> " * * * (A) possessor of land is not unqualifiedly privileged to deal with surface water as he pleases, nor is he absolutely prohibited from interfering with the natural flow of surface waters to the detriment of others. Each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others. He incurs liability only when his harmful interference with the flow of surface water is unreasonable." In determining the reasonableness of an interference, the trier of fact is to be guided by the rules stated in 4 Restatement on Torts 2d 108-142, Sections 822-831.

{¶53} All parties focus upon whether Foor's interference with the flow of water was unreasonable, but we believe it more appropriate to examine how all of the elements of the rule apply to the facts of this case, so we must first determine if Foor altered the natural flow of the water before we need consider whether the interference with the flow was unreasonable.

{¶54} Helfrich did not refute the evidence that the contours of approximately forty acres of the Foor farm create a natural flow of water eastward and across his farm, to the

extent water is not absorbed by the ground and trapped. The predecessors of the current owners of the Foor farm installed tile drains to move water off the Foor farm into a network that ultimately emptied into a ten inch tile drain that entered the property currently owned by Helfrich. In 1989, the owner of the Helfrich property created a pond on his property utilizing the water that passed through the ten inch tile.

{¶55} The natural flow of the water from Foor's property to Helfrich's was altered by the installation of tile over fifty years ago, according to the testimony of eyewitnesses to its repair and the testimony of the expert in agricultural drainage regarding the composition of the tile. The predecessors in interest to Helfrich did not object to the alteration, and the record contains no evidence of complaints regarding the installation or maintenance of the tile. Instead the record shows that they were cooperative in allowing the drain to exist and were involved in the maintenance of the drain. The drain tile benefited both parties as it reduced erosion and served to lessen infiltration of chemicals into the water.

{¶56} Foor decided to replace all the old tiles with new corrugated pipe that was more efficient and actually decreased the rate of water passing through the drain. While Foor did replace the network of tiles, it relied upon the same ten inch outlet to carry the flow from Foor's property through Helfrich's. The ten inch tile did not show any problems and when it was inspected by the contractor who installed the new network, the flow from the Foor property through the tile into the Helfrich property was running without any visible difficulty. The test hole, excavated close to the boundary line, confirmed that the drain was working well.

{¶57} The parties cite to several cases that address interference with the flow of surface water and its impact on neighboring properties, but none consider the replacement of a drainage system that has been in existence for decades. Helfrich cites *Von Stein v. Phenicie,* 3rd Dist. Crawford No. 3-13-18, 2014-Ohio-4872, ¶ 3, but that case involved a "farm that continued to flood rendering a significant portion of the land unable to produce a crop" and the actions of Phenicie to drain flooded property to make it usable, increasing the volume of water that was drained from the land. Foor repaired an existing drainage system that did not increase the amount of drainage and actually slowed the flow of water to the Helfrich property.

{¶58} In *Johnston v. Miller,* 15 Ohio App.2d 233, 237–38, 240 N.E.2d 566, 569 (2nd Dist.1968), a second case cited by Helfrich, the water was collected in a tiling system that diverted and concentrated what had previously been a natural flow of water into an existing drainage ditch and the court noted that "[a]n upper-land owner cannot lawfully increase the burden on lower lands by collecting surface water and discharging it in larger quantities at points other than those established by natural drainage. *See Munn v. Horvitz Co.,* 175 Ohio St. 521, 196 N.E.2d 764" *Id.* at 238. Helfrich's reliance on this case is misplaced as the record makes clear that the tile system at issue has existed for decades and the improvements installed by Foor did not increase the flow, but instead directed the same or lesser flow of water to the same discharge point, the ten inch tile that crossed Helfrich's property.

{¶59} We find that neither Foor nor Carr altered the flow of the surface water, but instead merely replaced the old tiles with a more efficient system that was designed to slow the flow of water. The amount of water flowing through the path that was established

years ago did not increase and Foor relied upon a ten inch drain that had been installed and maintained as part of that system for just as long. While the water no longer flows through that ten inch drain, but flows out of a standpipe and onto the surrounding property, there is no evidence in the record that would support a conclusion that Foor or Carr was responsible for the obstruction to the flow of water through the ten inch tile.

**{¶60}** Because the record shows that neither Foor nor Carr altered the flow of the water, except to slow it, we need not consider the "reasonableness" element of the *McGlashan* decision.

**{¶61}** We find that the trial court's decision to grant the directed verdict was correct, though for a different reason. *Cordray v. Internatl. Prep. School,* 128 Ohio St.3d 50, 2010–Ohio–6136, 941 N.E.2d 1170, ¶ 31; *Anderson v. Snider Cannata Co.,* Cuyahoga App. No. 91801, 2009–Ohio–4363, ¶ 31.

**{¶62}** Because we come to the same conclusion, we find that Helfrich's objection to the reasoning of the trial court moot as this court is not relying on the trial court's analysis.

**{¶63}** Helfrich's fourth and fifth assignments of error are overruled.

### VI., VII.

**{¶64}** In his sixth and seventh assignments of error, Helfrich contends that the trial court erred by failing to grant his motion for a directed verdict regarding the claim for an easement by estoppel or an irrevocable license and that there was insufficient evidence to support the jury's verdict.

**{¶65}** Helfrich's insurance defense counsel moved for a directed verdict on defendant's counterclaim for a prescriptive easement, easement by estoppel and

irrevocable license and the trial court denied the motion finding sufficient evidence to present the claims to the jury. We will consider each claim separately, but first we reaffirm, as mentioned in our analysis of the fourth assignment of error, our standard of review is de novo. *Brahm, supra.*

## EASEMENT BY ESTOPPEL

{¶66} To establish an easement by estoppel, a party must show that: 1) It is apparent and not hidden to a third party purchaser; 2) it would be reasonably foreseeable that the user of land under certain circumstances would substantially change his position; 3) the person seeking to establish the easement expends some proof of improving the property which is subject to the easement; and 4) there has been a representation by the servient estate that an easement exists. (Internal citations omitted.) *Roubanes v. Brown,* 5th Dist. Holmes No. 11CA019, 2012-Ohio-1933, ¶ 31. "Locating improvements on the dominant estate in order to take advantage of the represented easement has been held to satisfy the reliance requirement." *Id.,* at ¶ 29. *See also Kiser v. Clay*, 12th Dist. Butler No. CA95-12-211, 1997 WL 294399, *2; Maloney v. Patterson,* 63 Ohio App. 3d 405, 410, 579 N.E.2d 230, 233 (1989).

{¶67} While Helfrich states an assignment of error claiming that the trial court erred by failing to grant a directed verdict in his favor, his argument contains only a passing reference to that assignment and does not describe how, after construing the evidence most strongly in favor of the party against whom the motion is directed, that court should have found that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such

party. Instead, Helfrich cites to the transcript for evidence that supports his contention and ignores the evidence that would support a contrary view.

{¶68} Helfrich claims the underground tile was not apparent to him, though he admits that he is very familiar with the process of tiling farm land for drainage and has installed drainage tile. The ten inch drain tile ran beneath his property, emptied into a pond on his property and, due to some defects in the ceiling of the tile, created holes in his field that were very evident and caused him to worry about the safety of the property. Finally, Helfrich's letter to Foor delivered in July 2015 describes the tile, the holes in the field and asks Foor to make repairs. Transcript, p. 175, lines 1-21.

{¶69} We find that these facts provide probative evidence which, if believed, would permit reasonable minds to come to different conclusions as to whether the presence of the drain tile was apparent. The letter alone demonstrates that Helfrich, as a third party purchaser, was aware of the tile.

{¶70} And there is sufficient evidence to show that it was reasonably foreseeable that Foor and his predecessors in title would substantially change their position in reliance upon the right to drain through the tile in the Helfrich property. Foor and the prior owners installed and maintained the tile system in reliance upon the access granted to use the ten inch tile that now runs under Helfrich's land and discharges into his pond. The record shows that Foor and the prior owners of the Foor property installed and maintained the tile on the Foor property and did assist in repairing the tile on the Helfrich property before it was purchased by Helfrich. Finally, while the prior owners of the Helfrich property may not have expressly stated that they were granting an easement, their acquiescence to the installation and the maintenance of the line that served the Foor property and the

remaining facts described above provide sufficient evidence for the jury to address the question of whether an easement was created.

**{¶71}** For those reasons we find that the trial court did not err in denying the directed verdict.

**{¶72}** Helfrich also claims that there was insufficient evidence to support the jury's conclusion. "In a civil case, in which the burden of persuasion is only by a preponderance of the evidence, rather than beyond a reasonable doubt, evidence must still exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight)." *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517. However, this court is not a fact-finder; we neither weigh the evidence nor judge the credibility of the witnesses. *Markel v. Wright*, 5th Dist. Coshocton No. 2013CA0004, 2013-Ohio-5274, 2013 WL 6228490. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact-finder could base their judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA-5758, 1982 WL 2911 (Feb. 10, 1982).

**{¶73}** The underlying rationale for giving deference to the findings of the fact-finder rests with the knowledge that the fact-finder is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Id.* Accordingly, a fact-finder may believe all, part, or none of the testimony of any witness who appears before it. *Rogers v. Hill*, 124 Ohio App.3d 468, 706 N.E.2d 438 (4th Dist. 1998).

**{¶74}** After reviewing the transcript and the evidence submitted at trial we find that there was sufficient evidence upon which the jury could find that an easement by estoppel

was created by clear and convincing evidence. Foor provided evidence of the maintenance of the drain tile for approximately five decades during which time the existence and import of the drain tile was knowledge shared by the owners of both parcels and was also maintained by those owners. The testimony of the witnesses supports the conclusion that drain tile is an expected part of agricultural property and that Helfrich was very familiar with its use and installation and was aware of the tile serving the Foor property. Helfrich's protestations that he was an innocent third party buyer need not be believed by the jury as the jurors are free to believe all, some or none of his testimony. While we are not fact-finders, we note that Helfrich's reticent responses to questions and his attempt to reconcile his written comments with his stated positions could lead a jury to reject some, if not, all of his testimony.

{¶75} We hold that the record contains sufficient evidence to support the jury's conclusion that an easement by estoppel was created.

## IRREVOCABLE LICENSE

{¶76} An irrevocable license, also referenced as a license coupled with an interest, is an easement that arises from circumstances that do not fulfill other requirements for the creation of an easement. As noted by the court in *Joseph Bros. Co., LLC v. Dunn Bros.*, 6th Dist. No. L-18-1229, 2019-Ohio-4821, 148 N.E.3d 1260, ¶ 23:

> A license "is a privilege given to an individual to do an act upon the land of another *without* possessing any interest therein and is usually terminable at the will of the licensor." (Emphasis added.) *Cambridge Village Condominium Assn. v. Cambridge Condominium Assn.*, 139 Ohio App.3d 328, 333, 743 N.E.2d 954 (11th Dist.2000), citing *Mosher v. Cook, 62* Ohio

St.2d 316, 317, 405 N.E.2d 720 (1980). "If the parties intend for an agreement to be permanent, the license is said to be coupled with an interest." *Dalliance Real Estate, Inc. v. Covert,* 11th Dist. Geauga, 2013-Ohio-4963, 1 N.E.3d 850, ¶ 33. "A license coupled with an interest becomes irrevocable, meaning that it is no longer terminable at the will of the licensor, and constitutes a right to do the act rather than a mere privilege to do it. *** An irrevocable license is said to be an easement rather than a license."

*Cambridge Village* at 333-334, 743 N.E.2d 954.

**{¶77}** And "an easement is an interest in real property which runs with the land." *Falcone Bros., Inc. v. Pawmew, Inc.*, 5th Dist. Stark No. 2016CA00209, 2017-Ohio-6958, ¶ 21, quoting *Weir v. Consolidated Rail Corp.*, 12 Ohio App.3d 63, 465 N.E.2d 1341 (8th Dist. 1983).

**{¶78}** The Supreme Court of Ohio relied upon 5 Restatement of Property 3133-34, Section 519 to describe situations where what was originally a terminable license becomes a permanent right to continue a use:

"(1) Except as stated in Subsections (2), (3) and (4), a license is terminable at the will of the possessor of the land subject to it.

"(2) In the termination of the license of one who has entered upon land under a license, the licensee must be given a reasonable opportunity to remove himself and his effects from the land.

"(3) A license coupled with an interest can be terminated only to such an extent as not to prevent the license from being effective to protect the interest with which it is coupled.

"(4) A licensee under such a license as is described in s 514 (dealing with licenses analogous to easements) who has made expenditures of capital or labor in the exercise of his license in reasonable reliance upon representations by the licensor as to the duration of the license, is privileged to continue the use permitted by the license to the extent reasonably necessary to realize upon his expenditures."

*Mosher v. Cook United, Inc.*, 62 Ohio St.2d 316, 318, 405 N.E.2d 720 (1980).

**{¶79}** The jury was required to review the facts presented and determine whether the prior owners of the Helfrich property granted the prior owners of the Foor property a license to enter the property and install a drain tile and whether the facts show an intent that the license was to be permanent. The witnesses described the maintenance of the drain tile and offered an opinion that it had been installed decades earlier. The jury could reasonably conclude from this evidence that some or all of the prior owners granted a license to enter the property and install the tile.

*{¶80}* The effort and expense invested by Foor and its predecessors in title in creating and maintaining the tile in both parcels could be relied upon by the jury to find that the parties intended the license to be permanent. Further, the jury was free to infer from the testimony that the installation of tile is a critical part of the agricultural process and is not only expected to be a permanent installation, but also provides a benefit to both parties to the agreement in the form of the efficient redirection of rain water. *See Varjaski v. Pearch*, 7th Dist. Mahoning No. 04 MA 235, 2006-Ohio-5268, ¶ 15.

**{¶81}** And, in the context of developing agricultural property, the jury was presented with sufficient evidence to conclude that Foor and its predecessors in title

"made expenditures of capital or labor in the exercise of his license in reasonable reliance upon representations by the licensor as to the duration of the license, [and] is privileged to continue the use permitted by the license to the extent reasonably necessary to realize upon his expenditures." *Mosher, supra* at 318.

**{¶82}** We find that the jury received sufficient evidence from which it could conclude, by clear and convincing evidence, that Foor was entitled to an irrevocable license to use the property and that the trial court did not err by denying the motion for directed verdict on this issue.

**{¶83}** Helfrich's sixth and seventh assignments of error are overruled.

**VIII.**

**{¶84}** In his eighth assignment of error, Helfrich questions whether the jury became "influenced by passion or award excessive damages not supported in the record." After referencing the facts that Helfrich contends reflects an excessive award, he concludes by citing caselaw and concluding that "[a] new trial is warranted if the award is excessive based upon the evidence."

**{¶85}** Requests for a new trial based upon '[e]xcessive or inadequate damages, appearing to have been given under the influence of passion or prejudice" are subject to the requirement of Civ.R. 59 which states "a motion for a new trial, remittitur, additur, prejudgment interest, or attorney's fees must be served within twenty-eight days of the entry of judgment or, if the clerk has not completed service of the notice of judgment within the three-day period described in Civ.R. 58(B), within twenty-eight days of the date when the clerk actually completes service." Civ. R. 59(A)(4),(B). The record shows that Helfrich did not file a timely motion for a new trial or remittitur and, further, did not raise this issue

in the trial court. "A party's failure to raise an issue at the trial court level acts as a waiver of the issue on appeal." *State ex rel. Zollner v. Indus. Comm.* (1993), 66 Ohio St.3d 276, 278, 611 N.E.2d 830 *citing State ex rel. Gibson v. Indus. Comm.* (1988), 39 Ohio St.3d 319, 530 N.E.2d 916.

**{¶86}** We find that Helfrich has waived this issue as it was not presented in the trial court, but our decision would remain the same should we consider the merits. Helfrich does not argue the absence of evidence in support of the verdict, but that the jury improperly disregarded his evidence in favor of the evidence submitted by his opponents. The jury is authorized to accept some, all or none of the evidence and, in this case, it is evident that they accepted the testimony, evidence and argument presented by Foor in support of its counterclaim. Helfrich's claim that his is the more logical argument would not serve as grounds to reverse the jury's verdict.

**{¶87}** Helfrich's eighth assignment of error is overruled.

### IX.

**{¶88}** For his ninth assignment of error, Helfrich contends that the Trial Court erred when it allowed a misdemeanor criminal conviction to be introduced at trial. He argues that the conviction is not relevant and "presents the danger of unfair prejudice, confusion of the issues, or misleading the jury" and "is inadmissible under Evid.R. 403(A)."

**{¶89}** Helfrich testified at trial and put his credibility at issue, *Redman v. Watch Tower Bible & Tract Soc. of Pennsylvania,* 69 Ohio St.3d 98, 1994-Ohio-514, 630 N.E.2d 676 (1994) and "the credibility of a witness may be attacked by any party." Evid.R. 607(A); *Stark Cnty. Park Dist. v. Dickerhoof*, 5th Dist. No. 2017CA00231, 2018-Ohio-4319, 122 N.E.3d 608, ¶ 70. Evid.R. 609(A)(3) authorizes the use of a conviction of a crime to attack

the credibility of a witness "if the crime involved dishonesty or false statement, regardless of the punishment and whether based upon state or federal statute or local ordinance." We have previously ruled that theft offenses are crimes of dishonesty in this context. *State v. Tolliver*, 33 Ohio App.3d 110, 113, 514 N.E.2d 922, 925 (5th Dist.1986); *State v. Smith*, 5th Dist. Perry No. 98-CA-6, 1999 WL 668801, *4; *State v. Howell,* 5th Dist. Stark No. CA-7178, 1987 WL 19096, *2. And crimes of dishonesty, including theft, "are not subject to a weighing of probative value against prejudice. *State v. Lamp*, 7th Dist. Columbiana No. 20 CO 0001, 2021-Ohio-2354, ¶ 62.

**{¶90}** Helfrich's conviction for theft was properly admitted by the trial court. Helfrich's ninth assignment of error is overruled.

## X.

**{¶91}** In his tenth assignment of error, Helfrich asserts that the trial court erred by failing to re-open discovery as requested by his insurance counsel. First, we note that Helfrich has not provided any insight as to the consequence of the trial court's refusal to re-open discovery. He claims that the ruling was erroneous, but does not describe how his case was prejudiced by not being permitted to complete additional discovery leaving this court to question whether the ruling was inconsistent with substantial justice or affected Helfrich's substantial rights. Civ.R. 61. Helfrich complains the court acted inequitably in its rulings on various motions filed by the parties, but he does not explain how the denial of his discovery request hindered his ability to prepare and present his claim or a defense to the counterclaim. *Caito v. Zucallo*, 11th Dist. Portage No. 2000-P-0070, 2001 -Ohio- 8881, *4. He has neither alleged nor shown substantial prejudice by

the trial court's rulings. *Gibson v. Xerxes Corp.*, 9th Dist. Lorain No. 90CA004885, 1991 WL 60689, *1.

**{¶92}** Helfrich filed his complaint March 5, 2018 and Foor filed a timely answer and counterclaim. A discovery deadline was set at a pretrial attended by Helfrich, who voiced no objection to the deadline. An attorney subsequently entered an appearance on behalf of Helfrich, but limited his appearance to the defense of the counterclaim. The record contains no explanation of this late appearance, though it is clear that the discovery deadline had passed before the attorney appeared in the case. On May 20, 2019, more than one year after the filing of the complaint and six months after the deadline for discovery depositions had passed, four months after Helfrich's deadline to disclose his experts, and one month after Appellee's designation of experts, this attorney sought a continuance of the trial and requested that discovery be re-opened. The request for a continuance was granted, but the motion to re-open discovery was denied.

**{¶93}** Helfrich had the opportunity to conduct discovery regarding the counterclaim from the date that it was served upon him. He demonstrated understanding of the discovery process as he filed discovery requests on his own behalf and he has not offered any explanation for a failure to complete discovery regarding the counterclaim. He does not complain that the discovery deadline was unreasonable, only that it was inequitable for the trial court to deny his request when requests of the appellees where granted.

**{¶94}** A decision regarding the disposition of discovery issues is reviewed under an abuse of discretion standard. *Contini v. Ohio State Bd. of Edn.,* 5th Dist. Licking No. 2007CA0136, 2008-Ohio-5710, 2008 WL 4801645, ¶ 46 citing *State ex rel. The v.*

*Companies v. Marshall,* 81 Ohio St.3d 467, 469, 692 N.E.2d 198 (1998). "Abuse of discretion" implies an unreasonable, arbitrary, or unconscionable attitude on the part of the court. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). *Miller v. Milano*, 5th Dist. No. 2014CA00092, 2014-Ohio-5539, 25 N.E.3d 458, ¶ 15. Helfrich cites to several other cases in which the trial court granted requests for further discovery, but none involve a pro se defendant who is joined by defense counsel after the deadlines for discovery have expired.

{¶95}  We have considered the record in this case and find that the trial court did not abuse its discretion in denying the motion to re-open discovery.

{¶96}  Helfrich's tenth assignment of error is denied.

{¶97}  The decision of the Licking County Court of Common Pleas is affirmed.

By: Baldwin, J.

Wise, Earle, P.J. and

Wise, John, J. concur.